This case presents consolidated appeals and cross appeals from judgments entered by the trial court on January 31, 1996 and April 25, 1996. The controversy arises from the construction of the Frenchtown Square Mall located in Monroe, Michigan.
Plaintiffs, Cafaro Construction Company (Cafaro) and Frenchtown Square Partnership (Frenchtown), filed a complaint on July 13, 1993, against defendants BB Construction Company of Ohio (BB), BB Contractors and Developers, Inc., and Rheinschmidt Floor Contracting Company (Rheinschmidt), seeking compensatory damages for alleged defects in the Terrazzo tile floor installed in the Frenchtown Square Mall located in Monroe, Michigan. Plaintiffs' complaint asserted claims based on breach of contract, breach of warranty, negligence, and strict liability. On September 23, 1993, defendant BB filed an answer along with a cross-claim against defendant Rheinschmidt for indemnification, or, alternatively, contribution.
Trial commenced on January 16, 1996. At the close of the plaintiffs' case in chief, defendants BB and Rheinschmidt each moved for a directed verdict. The trial court overruled defendants' motions. Defendants' renewed their motions for a directed verdict at the conclusion of the entire case. The trial court again overruled defendants' motions.
At the conclusion of trial, the jury returned verdicts in favor of plaintiffs and against defendant BB in the amount of $880,500 for damages to the main concourse of the mall; in favor of plaintiffs and against defendant Rheinschmidt in the amount of $46,125 for the west concourse addition to the mall; and in favor of BB and against defendant Rheinschmidt in the amount of $660,375 on the cross-claim. On January 31, 1996, the trial court entered judgment on the jury's verdicts.
Defendants BB and Rheinschmidt each filed motions for jnov and/or motions for a new trial on February 8, 1996 and February 14, 1996, respectively. Also, on February 14, 1996, plaintiffs filed a motion for prejudgment interest and additur. On April 25, 1996, the trial court overruled all post trial motions.
Defendant Rheinschmidt filed a timely notice of appeal to this court which was assigned Case No. 96 C.A. 87. Defendant BB filed a timely notice of appeal to this court which was assigned Case No. 96 C.A. 95. Plaintiffs filed timely cross appeals in each appellate case. The cross appeals were limited to the trial court's denial of plaintiffs' motion for prejudgment interest. The two appeals were consolidated under Case No. 96 C.A. 87.
After filing the notices of appeal, plaintiffs and defendant BB reached a settlement of all claims between them. On September 19, 1996, plaintiffs and BB filed a voluntarily dismissal of all appellate issues between them. Plaintiffs also assigned to defendant BB all rights against defendant Rheinschmidt. Defendant BB's appeal therefore involves plaintiffs' claim for prejudgment interest against defendant Rheinschmidt as well as Defendant BB's indemnification and/or contribution claim against defendant Rheinschmidt.
In 1987, plaintiffs Cafaro and Frenchtown initiated an endeavor to construct a mall in Monroe, Michigan. The real property on which the future mall was to be built was owned by Frenchtown. Cafaro was to serve as the construction manager and general contractor for the construction of the mall.
Frenchtown is a general partnership consisting of members of the Cafaro family. Cafaro is a corporation organized under the laws of Ohio.
On March 20, 1987, Cafaro entered into an architectural contract with Buchanan, Ricciuti, and Associates to prepare the plans, specifications, and working drawings for the mall project. Thereafter, Cafaro began soliciting bids from outside contractors to build the mall. In May of 1987, BB submitted a bid on the general construction contract for the main concourse of the mall. In preparing the bid, BB had obtained prices from tile subcontractors other than Rheinschmidt. At the direction of Cafaro, BB obtained a price quote from Rheinschmidt, whom Cafaro already knew to have a lower price for the Terrazzo tile floor. BB contacted Rheinschmidt and obtained a bid substantially less than the tile bids originally obtained by BB from other contractors. BB then incorporated Rheinschmidt's bid into its contract bid to Cafaro.
On June 15, 1987, Cafaro, on behalf of Frenchtown, entered into a general construction contract with BB to construct the main concourse of the Frenchtown Square Mall. After BB entered into the general construction contract with Cafaro, BB entered into a separate contract with Rheinschmidt for the installation of Terrazzo tile and ceramic tile in the main concourse of the mall.
In addition to the main concourse, Frenchtown also undertook construction of a west concourse leading to a J.C. Penney store. Cafaro served as the general contractor for this portion of the work. On March 25, 1988, Cafaro entered into a separate contract with Rheinschmidt to install the Terrazzo tile in the west concourse of the mall.
The Terrazzo tile installation in the main concourse of the mall began in January and continued through April of 1988. After the mall opened in May of 1988, plaintiffs Cafaro and Frenchtown began noticing problems with the Terrazzo tile floor. The problems with the Terrazzo floor started in 1988 and continued to the date of trial.
On July 13, 1993, plaintiffs Frenchtown and Cafaro commenced this action seeking to recover compensatory damages for, among other things, the cost of replacement of the Terrazzo floor.
Rheinschmidt sets forth three and BB sets forth four assignments of error. Rheinschmidt was the first to file their notice of appeal, therefore, their arguments will addressed first.
In their first assignment of error, Rheinschmidt contends:
 "THE JUDGMENT IN FAVOR OF PLAINTIFF, CAFARO CONSTRUCTION CO., AGAINST DEFENDANTS IS AGAINST THE MANIFEST WEIGHT OF EVIDENCE."
Rheinschmidt argues that any judgment in favor of Cafaro is against the manifest weight of the evidence since Cafaro failed to prove that it sustained any damage. Rheinschmidt avers that the restoration costs to replace the floor is that of the property owner, Frenchtown, that Cafaro was simply a representative of Frenchtown, that Frenchtown paid for all of the construction work, and that Frenchtown is a distinct legal entity from Cafaro. Based on the aforementioned, Rheinschmidt argues that because Frenchtown never made a claim against Cafaro, Cafaro was not entitled to any part of the judgment. Rheinschmidt further states that their request to the trial court to provide the jury with separate verdict forms for each plaintiff was denied.
BB argues that because Cafaro, as general contractor, was liable to Frenchtown for Rheinschmidt's performance, Cafaro had a claim against Rheinschmidt. BB alleges that Rheinschmidt waived any objection to the unified verdict forms. BB contends that Frenchtown and Cafaro were entitled to a single recovery and that the joint verdict forms achieved this result. Finally, BB argues that Rheinschmidt's first assignment of error cannot affect the judgment in favor of BB and against Rheinschmidt for indemnification, claiming that judgment is independent of the judgment entered in favor of plaintiffs and against Rheinschmidt in the amount of $46,125.
"On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 231, 227 N.E.2d 212. In a civil case, '[j]udgments supported by some competent, credible evidence going to all of the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' CE Morris Co. v.Foley Construction Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578." Robbins v. Bennett (Sept. 26, 1997), Mahoning App. No. 96 C.A. 77, unreported.
"* * * To recover on a breach-of-contract claim, the claimant must prove not only that the contract was breached, but that the claimant was thereby damaged." Metropolitan Life Ins. Co.v. Triskett Illinois, Inc. (1994),97 Ohio App.3d 228, 235. See, also, Jaric, Inc. v. Chakroff
(1989), 63 Ohio App.3d 506, 521.
Frenchtown Square Partnership and Cafaro Construction Company are separate legal entities. Frenchtown was the owner of the real property and future mall and had paid the entire cost to construct the mall. Thus, Frenchtown was the real party in interest. Frenchtown did not assert a claim against Cafaro for the Terrazzo tile. Consequently, Cafaro has not shownany damage. Furthermore, Rheinschmidt did request that the trial provide the jury with separate verdict forms for each plaintiff, which the trial court did not.
The trial court did err by failing to provide separate verdict forms, and Rheinschmidt is correct in their assertion that any judgment in favor of Cafaro is against the weight of the evidence as Cafaro has failed to prove damages. This court directs that the judgment be found to be in favor of plaintiff Frenchtown only.
Rheinschmidt's first assignment of error is with merit.
In their second assignment of error, Rheinschmidt claims:
 "THE TRIAL COURT ERRED IN DENYING THE MOTION FOR DIRECTED VERDICT MADE BY DEFENDANT WHERE PLAINTIFF, FRENCHTOWN SQUARE PARTNERSHIP, FAILED TO COMMENCE ITS ACTION WITHIN THE STATUTE OF LIMITATIONS."
Rheinschmidt states that the contract to construct the main concourse of the mall was between Cafaro, BB, and Rheinschmidt, and that the contract regarding the west concourse was between Cafaro and Rheinschmidt. Rheinschmidt goes on to claim that Frenchtown did not have a written contract with any entity for construction work at the mall. Rheinschmidt argues that without a contract between Frenchtown and either defendant, Frenchtown lacked privity to pursue a breach of contract claim. Rheinschmidt argues Frenchtown could only bring an action in tort for negligent construction, and that the four year statute of limitations for a tort claim had expired because over four years had passed from the time Frenchtown knew of the injury until the time they filed the suit.
On January 26, 1996, Rheinschmidt filed a motion for a directed verdict asserting the statute of limitations argument that they now present on appeal.
BB argues that the case was submitted to the jury as a breach of contract action, not a negligence action. BB goes on to argue that although Frenchtown did not sign the contracts with BB or Rheinschmidt, they were a party to and beneficiary of both contracts because Frenchtown was identified as the "Owner" under the contracts, and that the "warranty, guarantee and indemnity provisions of all three contracts run in favor of the Owner, namely Frenchtown." BB further asserts that BB and Rheinschmidt were paid by Frenchtown for the work performed under the contracts.
BB also contends that even if Frenchtown was not a party to the construction contract, they were clearly an identified beneficiary, and thus had enforceable rights under the contract. BB concludes that the fifteen year statute of limitations must apply.
Alternatively, BB argues that even if Frenchtown's claims against Rheinschmidt sounded in tort and were governed by a four year statute of limitations, the complaint was timely filed because it was not until 1990 that Frenchtown was informed that the Terrazzo tile must be replaced.
Rheinschmidt responds by arguing that Frenchtown knew the floor was defective in 1988.
 In Titanium Industries v. S.E.A., Inc. (1997), 118 Ohio App.3d 39, this court set forth the law on directed verdicts:
 "When reasonable minds can reach different conclusions from the evidence presented, a motion for directed verdict should be denied. Ziegler v. Wendel Poultry Services, Inc. (1993), 67 Ohio St.3d 10, 12-13. The determination to be made by a trial court when a motion for directed verdict has been made is not whether one version of the facts presented is more persuasive than another; rather, it is a determination that only one result can be reached under the theories of law presented in the complaint. Eldridge v. Firestone Fire Rubber Co. (1985), 24 Ohio App.3d 94. The trial court must neither consider the weight of the evidence nor the credibility of witnesses in disposing of a directed verdict motion. Thus, if there is competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied. Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284-285. Rulings on motions for directed verdict are subject to de novo review on appeal. Byrley v. Nationwide Ins. Co. (1994), 94 Ohio App.3d 1, 18, discretionary appeal not allowed 70 Ohio St.3d 1441. "
In Anderson v. Olmsted Utility Equipment, Inc. (1991),60 Ohio St.3d 124, 132, footnote 5, the Ohio Supreme Court stated:
 "Section 302 of the Restatement and the 'intent to benefit' test require, in general terms, that in order for a third-party beneficiary to have enforceable rights under a contract, circumstances surrounding the promise between the promisor and promisee must indicate that the promisee intended to benefit the third party, and the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary. * * *"
See, also, Hill v. Sonitrol of Southwestern Ohio,Inc. (1988), 36 Ohio St.3d 36, 40.
Frenchtown is identified as "Owner" in the contracts. The warranties under the contracts were to the "Owner". Furthermore, from all the evidence, Frenchtown clearly was the intended beneficiary under all of the contracts. Therefore, Frenchtown can enforce the contracts, and thus, had a fifteen year statute of limitations in which to file suit pursuant to R.C. 2305.06.
Rheinschmidt's second assignment of error is without merit.
In their third assignment of error, Rheinschmidt argues:
 "THE TRIAL COURT ERRED IN DENYING THE MOTION FOR DIRECTED VERDICT MADE BY DEFENDANTS WHERE PLAINTIFF FAILED TO SATISFY ITS BURDEN BY OFFERING EVIDENCE OF THE VALUE OF THE REAL PROPERTY BEFORE AND AFTER THE DAMAGE DEVELOPED."
Rheinschmidt states the law in Ohio requires the plaintiff/landowner to present evidence of the diminution of the value of the real property before and after the injury developed, citing Reeser v. Weaver Bros. (1992), 78 Ohio App.3d 681. Rheinschmidt argues that when the plaintiff/landowner fails to offer any evidence of the fair market value before and after the injury developed, the plaintiff/landowner is precluded from recovering restoration costs. Rheinschmidt citesCranfield v. Landerdale (1994), 94 Ohio App.3d 426, and Reeser,supra.
Rheinschmidt recognizes that Robert Scrivens, the plaintiffs' real estate appraiser, testified that the value of the Frenchtown Square Mall is affected by the condition of the Terrazzo tile floor and that the diminution in the value of the mall is the same as the cost to replace the Terrazzo tile floor in question. Rheinschmidt argues that Scrivens did not offer any testimony regarding the cost to replace the floor. Rheinschmidt contends that pursuant to Evid.R. 702 and 704, the trial court erred in permitting Frenchtown's real estate appraiser to testify, over objection, that in his opinion the diminution in value of the mall equals the replacement costs of the Terrazzo tile floor.
Evid.R. 702 describes when an expert witness may testify in the form of an opinion. Evid.R. 704 permits opinion testimony on the ultimate issue if such opinion testimony is otherwise admissible. Rheinschmidt argues that the opinion was not admissible as it did not relate to matters beyond the knowledge or experience possessed by a lay person, citingBostic v. Connor (1988), 37 Ohio St.3d 144, 148.
BB argues that Rheinschmidt's argument applies to tort actions, not contract actions. BB contends that in the case of a construction contract breached by the contractor, the proper measure of damages is the reasonable cost of placing the building in the condition contemplated by the parties at the time they entered into the contract. BB cites Sites v. Moore
(1992), 79 Ohio App.3d 694, 702 and Jones v. Honchell (1984),14 Ohio App.3d 120, 123.
"When a construction contract has been breached, the proper measure of damages is the reasonable cost of placing the building in the condition contemplated by the parties at the time they entered into the contract." Jones v. Honchell (1984),14 Ohio App.3d 120, 123. See, also, Sites v. Moore
(1992), 79 Ohio App.3d 694.
Based on Jones, supra, and Sites, supra, plaintiffs were not required to show the fair market value of the mall before and after the damage. Furthermore, the testimony of Robert Scrivens was properly admitted pursuant to Evid.R. 702. Evid.R. 702 permits opinion testimony of an expert witness if the testimony relates to matters beyond the knowledge of lay persons, if the witness is qualified as an expert, and if the testimony is based on reliable "specialized" information. Mr. Scrivens was a certified real estate appraiser in the state of Ohio. Mr. Scrivens expressed an opinion based on his education and experience as a real estate appraiser, and his examination of the premises. Finally, the information Mr. Scrivens conveyed, that the diminution to the fair market value of the property is equal to the cost to cure the floor, is beyond the knowledge of lay persons.
Rheinschmidt's third assignment of error is without merit.
We now turn BB's arguments on appeal. In BB's first assignment of error, BB argues:
 "THE TRIAL COURT ERRED IN OVERRULING PLAINTIFF CAFARO'S MOTION FOR PREJUDGMENT INTEREST UNDER R.C. 1343.03(A)."
BB argues that R.C. 1343.03(A) requires an award of prejudgment interest in a contract action and that the trial court specifically found the case to be premised on a breach of contract. Therefore, BB argues, plaintiffs are entitled to an award of prejudgment interest. BB cites Royal Elec. Constr.Corp. v. Ohio State Univ. (1995), 73 Ohio St.3d 110, in support.
Rheinschmidt argues that the record shows the judgment was based on tort theories rather than breach of contract, because plaintiff Frenchtown was not a party or an intended beneficiary of the contract entered into by Rheinschmidt. Rheinschmidt concludes by stating that because the action was based on tort, BB, as assignee of Frenchtown, is not entitled to interest based on breach of contract under R.C. 1343.03(A).
On February 14, 1996, plaintiffs, Frenchtown and Cafaro, filed a motion for prejudgment interest and additur, requesting prejudgment interest pursuant to R.C. 1343.03(A) and (C) from July 13, 1993, the date plaintiffs filed this action. In an April 25, 1996 decision, the trial court stated:
 "4. Plaintiff's Motion for Prejudgment Interest and Additur.
 "The Court finds that this case is based on a breach of contract. Further, the defendants have fully cooperated in discovery proceedings and did not attempt to unnecessarily delay any of the proceedings. Motion for Prejudgment Interest in this case is not well taken. The Plaintiffs herein are entitled to the legal rate of interest on the EIGHT HUNDRED AND EIGHTY THOUSAND AND FIVE HUNDRED DOLLARS ($880,500.00) judgment from the date of the verdict until same is paid."
R.C. 1343.03 reads, in pertinent part:
 "(A) In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, and no more, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract."
Generally, a determination regarding the award of prejudgment interest is within the discretion of the trial court.Vivo v. Markovsky (May 2, 1996), Mahoning App. No. 94 C.A. 152, unreported.
In Royal Elec. Constr. v. Ohio State Univ.
(1995), 73 Ohio St.3d 110, the Ohio Supreme Court stated:
 "It is apparent that courts in Ohio have attached great significance to the liquidated-unliquidated dichotomy, or have refined this rule and allowed prejudgment interest in situations where the claim is unliquidated but 'capable of ascertainment.' See, e.g., Shaker Sav. Assn. v. Greenwood Village, Inc. (1982), 7 Ohio App.3d 141, 7 OBR 184, 454 N.E.2d 984. It is also apparent that these judicial creations (liquidated-unliquidated and capable-of-ascertainment tests) have caused much confusion among members of our bench and bar in deciding under what circumstances prejudgment interest is warranted. Hence, we believe that the focus in these types of cases should not be based on whether the claim can be classified as 'liquidated' 'unliquidated' or 'capable of ascertainment.' Rather, in determining whether to award prejudgment interest pursuant to R.C. 2743.18(A) and 1343.03(A), a court need only ask one question: Has the aggrieved party been fully compensated?
 "An award of prejudgment interest encourages prompt settlement and discourages defendants from opposing and prolonging, between injury and judgment, legitimate claims. Further, prejudgment interest does not punish the party responsible for the underlying damages as suggested by appellees, but, rather, it acts as compensation and serves ultimately to make the aggrieved party whole. * * * Indeed, to make the aggrieved party whole, the party should be compensated for the lapse of time between accrual of the claim and judgment.
 "Appellees further suggest that prejudgment interest should not be allowed in this case because '[t]he majority of American jurisdictions, in determining whether prejudgment interest is awardable in contract cases, follow the liquidated/capable of ascertainment test — also called the "degree of certainty" test — or some variant thereof.' However, we are not here concerned with what is or is not the majority view. Rather, we are only concerned with the law of this state as pronounced by our General Assembly. In addition, we are more persuaded by those states that have moved away from the medieval notion that interest is evil. * * *
 "Accordingly, we hold that in a case involving breach of contract where liability is determined and damages are awarded against the state, the aggrieved party is entitled to prejudgment interest on the amount of damages found due by the Court of Claims. The award of prejudgment interest is compensation to the plaintiff for the period of time between accrual of the claim and judgment, regardless of whether the judgment is based on a claim which was liquidated or unliquidated and even if the sum due was not capable of ascertainment until determined by the court." Royal, supra, at 116-117
Based on Royal, plaintiff Frenchtown was entitled to prejudgment interest on its judgment. Royal Electric mandates prejudgment interest from the time the claim accrued. BB argues on appeal that the date of accrual should be May 4, 1988. However, in the February 14, 1996 motion, plaintiffs only asked for prejudgment interest from the date the action was filed: July 13, 1993. Thus, although the claim may have accrued prior to July 13, 1993, Frenchtown had limited its claim for prejudgment interest by its demand in the trial court.
BB's first assignment of error is found to be with merit.
In their second assignment of error, BB contends:
 "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT BB'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT REQUESTING THAT JUDGMENT ON THE CROSS-CLAIM AGAINST RHEINSCHMIDT BE INCREASED TO $880,500."
BB sets forth the following issue for review:
 "IN AN ACTION BY A PROPERTY OWNER AGAINST A CONTRACTOR AND SUBCONTRACTOR FOR BREACH OF A CONSTRUCTION CONTRACT, WHERE THERE IS NO EVIDENCE THAT THE CONTRACTOR HAS ITSELF BREACHED THE CONTRACT BUT IS LIABLE TO THE OWNER FOR THE SUBCONTRACTOR'S BREACHES, THE CONTRACTOR IS ENTITLED TO JUDGMENT FOR INDEMNITY AGAINST SUBCONTRACTOR IN THE FULL AMOUNT OF THE JUDGMENT IN FAVOR OF THE OWNER AGAINST THE CONTRACTOR."
The jury returned a verdict in the amount of $880,500 in favor of plaintiffs and against BB. Nevertheless, on the cross-claim for indemnity, the jury rendered a verdict in favor of BB and against Rheinschmidt in the amount of $660,375. Defendant BB thereupon filed a motion for judgment notwithstanding the verdict. In a journal entry filed April 25, 1996, the trial court overruled the motion for judgment notwithstanding the verdict.
BB argues that plaintiffs' entire theory against BB was that, as a general contractor, BB was liable for the acts and omissions of its subcontractors. BB states there was evidence that BB did nothing wrong to cause the floor problem. Thus, BB concludes that "there is no substantial evidence from which reasonable minds could conclude that BB was entitled to anything less than full indemnity from Rheinschmidt."
Rheinschmidt argues that BB's own negligence contributed to the problems with the Terrazzo floor. Specifically, Rheinschmidt argues that BB failed to properly pour the concrete subbase under the Terrazzo floor, and that expert witness Jess Mcilvain testified that BB's failure to properly pour the concrete subbase contributed to some of the defects in the Terrazzo tile. Rheinschmidt argues that only the right to contribution, and not indemnity, should be afforded to BB as BB and Rheinschmidt were joint and severally liable for the loss, citing R.C. 2307.31(A).
In Posin v. A.B.C. Motor Court Hotel, Inc.
(1976), 45 Ohio St.2d 271, 275, the Ohio Supreme Court set forth the standard for a judgment notwithstanding the verdict:
 "The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions. McNees v. Cincinnati Street Ry. Co. (1949), 152 Ohio St. 269; Ayers v. Woodard (1957), 166 Ohio St. 138; Civ. R. 50(A) and (B)."
"Contribution, when it exists, is the right of a person who has been compelled to pay what another should have paid in part to require partial (usually proportionate) reimbursement and arises from principles of equity in natural justice. Indemnity, on the other hand, arises from contract, express or implied, and is the right of a person, who has been compelled to pay what another should have paid, to require complete reimbursement." Henry v. Consol. Stores Internatl. Corp.
(1993), 89 Ohio App.3d 417, 421.
In its September 23, 1993 cross-claim, BB set forth the following:
 "33. BB states that if it is found to be liable by verdict or settlement to the Plaintiffs, it is entitled to indemnification and judgment over and/or contribution under Ohio Revised Code Sections 2307.31 and 2307.32 and the Ohio Common Law."
Evidence was adduced at trial that the architectural plans for the installation of the electrical ducts running underneath the Terrazzo floor required BB to pour one quarter inch of concrete over the top surface of the duct. It was further adduced at trial that BB did not pour any concrete over the electrical ducts that ran underneath the Terrazzo floor.
Rheinschmidt's expert, Jess Mcilvain, testified that the electrical ducts are made of sheet metal and are not a structural element, that concrete should be placed on top of the duct to add structural coverage and support, and that failure to do so would cause the tile above the electrical duct to crack due to the bending and deflexing of the sheet metal. However, Rheinschmidt's own expert, Mr. Mcilvain, who testified that there was not any concrete poured over the electrical ducts, went on to testify that industry standards required 1.5 to 2 inches of concrete above the electrical ducts, and that a quarter inch of concrete above the electrical duct (which is the amount the architectural plans called for) would not have added any substantial support or stability to the floor.
Although Mr. Mcilvain testified that a quarter inch of concrete above the electrical duct would not have added any substantial support or stability to the floor, it was within the province of the jury to disregard said statement, and find that the failure to pour the quarter inch of cement over the electrical duct contributed to some of the defects in the terrazzo floor. The record contained evidence that concrete should have been placed over the electrical duct to add structural support. This alone provided sufficient evidence for the jury to conclude that a quarter inch of concrete over the electrical duct would have made a difference. We reach this conclusion by construing the evidence most strongly in favor of Rheinschmidt. See Posin, supra.
BB's second assignment of error is without merit.
In its third and fourth assignments of error (which BB combines in its brief), BB contends:
 "[3] THE TRIAL COURT ERRED IN OVERRULING DEFENDANT BB'S MOTION FOR A NEW TRIAL ON THE CROSS-CLAIM FOR INDEMNITY AGAINST DEFENDANT RHEINSCHMIDT.
 "[4] THE JUDGMENT IN FAVOR OF BB ON THE INDEMNITY CLAIM, FOR AN AMOUNT LESS THAN THE JUDGMENT AGAINST BB ON THE PLAINTIFFS' CLAIM, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
BB presents the following issue for review:
 "IN AN ACTION FOR INDEMNIFICATION BROUGHT BY A CONTRACTOR WHO HAS BEEN REQUIRED TO ANSWER FOR DAMAGES CAUSED BY HIS SUBCONTRACTOR, THE CONTRACTOR IS ENTITLED TO JUDGMENT AGAINST THE SUBCONTRACTOR FOR THE FULL AMOUNT OF THE UNDERLYING CLAIM, WHERE THERE IS NO EVIDENCE THAT THE CONTRACTOR ITSELF HAS DIRECTLY CAUSED THE DAMAGES OF THE PROPERTY OWNER."
BB's argument for its third and fourth assignments of error mirror those of its second.
Civ.R. 59(A) provides:
 "(A) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
 "(1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;
"* * *
 "(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;
 "(5) Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property;
 "(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;
"(7) The judgment is contrary to law;"
In setting forth the standard for a reviewing court concerning a trial court's decision on whether to grant a new trial, the Ohio Supreme Court stated:
 "In evaluating the propriety of the trial court's decision premised on the weight of the evidence, we must note that a reviewing court can reverse such an order for a new trial only upon a finding of an abuse of discretion. * * * 'Abuse of discretion' connotes 'an unreasonable, arbitrary or unconscionable attitude upon the part of the court.' * * * In addition, the abuse of discretion standard requires a reviewing court to 'view the evidence favorably to the trial court's action rather than to the original jury's verdict.' * * * This deference to a trial * * * [court] stems in part from the recognition that the trial judge is better situated than a reviewing court to pass on questions of witness credibility and the 'surrounding circumstances and atmosphere of the trial.' " Malone v. Courtyard by Marriott L.P. (1996), 74 Ohio St.3d 440, 448
In BB's motion for a new trial, BB asks for relief for the following reasons:
 "1. Irregularity in the proceedings by the jury prevented B B from having a fair trial;
"2. Portions of the judgment are contrary to law;
 "3. The judgment is not sustained by the weight of the evidence; and
 "4. Error of law occurred during the course of the trial which was brought to the attention of the trial court."
In denying BB's motion for a new trial, the trial stated:
 "The court finds that there was sufficient evidence to support the jury's verdict, there was no irregularity in the proceedings of the jury, there was no judgment contrary to law, and there was no error of law that occurred during the trial that was brought to the Court's attention."
BB contends that in the instant case, there is insufficient evidence to support a judgment for indemnification in an amount less than the plaintiffs' judgment against BB. BB concludes by arguing that the trial court's decision to deny a new trial was an abuse of discretion.
Rheinschmidt counters as they did in BB's second assignment of error. Rheinschmidt contends that there was sufficient evidence to show that BB's negligence caused part of the damage to the Terrazzo floor.
Based on our finding in BB's second assignment of error, seesupra, we conclude that the trial court did not error by failing to grant BB's motion for a new trial and that the decision of the lower court is not against the weight of the evidence.
BB's third and fourth assignments of error are without merit.
The decision of the trial court is affirmed in part and reversed in part.
Cox, J., concurs; see concurring opinion
Vukovich, J., concurs.
APPROVED:
 ______________________________ Gene Donofrio Presiding Judge