OPINION
On January 28, 1999, William W. Lamkin filed a complaint in the Franklin County Court of Common Pleas, naming as defendants First Community Bank and Roger Blair, the latter being the bank's in-house counsel and senior vice-president. Mr. Lamkin's lawsuit resulted from a dispute arising from two separate instruments to which he and the bank are parties, a cognovit promissory note, and a subsequently executed forbearance and security agreement. The complaint set forth seven claims for relief: "fraud in the inducement," "actual fraud," "conspiracy to commit fraud in the inducement and actual fraud," "breach of contract," "unjust enrichment," "mutual mistake," and "breach of modification agreement and accord and satisfaction."
At the heart of this dispute is the bank's assessing an 18% "default interest rate" on payments due pursuant to the respective instruments. The complaint set forth the following factual background. On January 6, 1997, Mr. Lamkin became a co-maker of an $800,000 cognovit promissory note, with First Community Bank as the lender. The note was secured by an open-end mortgage on real estate "owned by the primary borrower and co-maker of said note, to wit: Integrity Supply, Inc." The interest rate on the note was 8.5%.
On July 16, 1997, the parties entered into a "forbearance and security agreement." The complaint alleged that the second agreement resulted from Integrity Supply's financial difficulties and "because the anticipated sale of the real estate securing the Note was delayed through no fault of [Lamkin]." The complaint further averred that "Plaintiff Lamkin intended the interest rate on the Agreement to be the same as that in the Note," 8.5%.
According to several of Mr. Lamkin's claims for relief, the defendants fraudulently induced him to enter into the agreements "knowing all the while that [the bank] would unilaterally charge [Lamkin] an interest rate of 18% at the time the real estate securing the original Note was sold." Mr. Lamkin claimed that he never agreed to an 18% interest rate and "was surprised when he learned that [the bank] would charge the default interest rate on the original Note." The defendants purportedly "falsely represented to Plaintiff Lamkin that the interest rate on the Agreement was 8.5% (the same as the Note) and/or failed to disclose to Plaintiff * * * and/or concealed from Plaintiff * * * the material fact that the interest rate on the Agreement was actually 18%." According to Mr. Lamkin, he had telephone conversations with representatives of the bank which led him to believe that he was fully complying with the bank's actual expectations of him, including making payments as orally directed, notwithstanding the verbatim terms of the note and forbearance agreement.
The details of relevant provisions of the respective instruments are addressed below in our discussion of the first assignment of error.
The action was ultimately resolved in favor of the defendants by way of a successful summary judgment motion. The trial court granted defendants judgment pursuant to a lengthy decision rendered July 12, 2000 and journalized July 26, 2000.
William W. Lamkin (hereinafter "appellant") has timely appealed, assigning three errors for our consideration:
 I. The lower court committed reversible error in granting summary judgment in favor of Defendants First Community Bank and Roger Blair because Defendants were not entitled to judgment as a matter of law and the case presented genuine issues of material fact which demand jury resolution.
 II. The lower court erred by not considering all the relevant deposition testimony.
 III. The lower court abused its discretion by refusing to read the last 14 pages of Plaintiff's Memorandum Contra to Defendant's Motion for Summary Judgment.
In his first assignment of error, appellant argues that the trial court erred in granting defendants' motion for summary judgment.
Preliminarily, we set forth the standards by which we are bound in reviewing a grant of summary judgment. Civ.R. 56 governs summary judgment, a procedural device designed to terminate litigation where a resolution of factual disputes is unnecessary. In particular, Civ.R. 56(C) provides, in pertinent part:
 * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *
Appellate review of summary judgment motions is de novo. Helton v. Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court. * * *" Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103.
In addressing the appropriateness of rendering a Civ.R. 56 summary judgment, the Supreme Court of Ohio in Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66, set forth the well-established initial requirements: (1) there is no genuine issue as to any material fact; (2) the movant is entitled to judgment as a matter of law; and, (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made, the nonmovant being entitled to have the evidence construed most strongly in his favor. See, also, State ex rel. Grady v. State Emp. Relations Bd. (1997),78 Ohio St.3d 181, 183.
Turning now to the documents which are at the center of this controversy, we look first to the initial January 1997 promissory note. The note indicates that the "borrower(s)" are "TB/WL Limited, LLC." Both appellant and Thomas A. Brown executed the document twice, in two separate capacities: first, as "members" of TB/WL Limited, LLC; and second, "personally and individually." The guarantor of the note is "Integrity Supply, Inc.," signed by Thomas A. Brown as its president.
Because the terms of both instruments, particularly those portions emphasized below, set forth the primary factual and legal bases underlying the trial court's grant of summary judgment, we quote at length certain critical portions of both.
The initial document, the cognovit promissory note provides, in relevant part:
$800,000.00
City of Columbus, State of Ohio January 6, 1997 (effective date)
 On or before the Maturity Date below, the undersigned, a * * * limited liability company * * *, for value received, and if more than one, jointly and severally, promise to pay to the order of First Community Bank (hereinafter referred to as "Bank" or "Holder") the sum of eight hundred thousand dollars, $800,000.00 U.S. Dollars, (hereinafter referred to as the "Borrowing") plus Interest per annum at a rate of: 8.5% fixed for one year, and adjusts yearly thereafter.
Interest shall be computed on a year of 360 days.
This note is payable as follows:
 Principal and Interest payments shall be payable in monthly Installments being [sic] on March 1, 1997. Payments will be in the amount of $6,441.82. All payments shall be made at the Bank's address below unless otherwise designated by Holder in writing.
 I will make these payments as scheduled until I have paid all of the principal and Interest and any other charges described below that I may owe under this note. My scheduled payments will be applied to Interest before principal. If, on February 1, 2007, I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
* * *
LIMITS ON INTEREST RATE CHANGES
 My Interest rate will never be Increased or decreased on any single change date by more than two percent (2.00%) from the rate of Interest I have been paying for the preceding period. My Interest rate will never be greater than 14.50. My interest rate will never decrease below a rate of 7.50%.
* * *
 This Note is secured by that certain mortgage on the property known as:
 7995 Thurman Avenue Columbus, Ohio 43206
 between the Borrower and the Bank, dated January 6, 1997.
* * *
Events of Default:
 This note, and all other Obligations of the undersigned to Holder, shall be and become Immediately due and payable at the option of the Holder, without any demand or notice whatsoever, upon the occurrence of any of the following described events, each of which shall constitute a default:
 1. Any failure to make any payment when due of the principal or Interest on this note, the occurrence of any event of default as therein defined on any other Obligations of the undersigned, or a default in the obligations under any security documents.
* * *
 Upon the occurrence of an Event of Default herein described[,] Holder may, at its option declare this note and all other Obligations of the undersigned, to be fully due and payable in their aggregate amount together with accrued Interest plus any applicable prepayment premiums, fees, and charges.
 In addition to any other remedy permitted by law, the Holder may at any time, without notice, apply the Collateral to this note or such other Obligations, whether due or not, and Holder may, at its option, proceed to enforce and protect its rights by an action at law or in equity or by any other appropriate proceedings. * * *
 If any payment Is not paid when due (whether by acceleration or otherwise) or within 15 days thereafter, undersigned agrees to pay to Holder a late payment fee as provided for in any loan agreement of 5.00% of the payment amount, with a minimum fee of $10.00. After an Event of Default, the undersigned agrees to pay to Holder a fixed charge of 18.00% until the loan and escrows are brought current, or the undersigned agrees that Holder may, without notice, Increase the above stated interest rate by 8.75%, whichever is greater. * * *
* * *
 ENTIRE AGREEMENT: The undersigned agrees that there are no conditions or understandings which are not expressed in this note and the documents referred to herein.
 WAIVER: No failure on the part of Holder to exercise any of its rights hereunder shall be deemed a waiver of any such rights or of any default. Demand, presentment, protest, notice of dishonor, notice of protest and notice of default are hereby waived.
 JURY WAIVER: The undersigned, and any endorser or guarantor hereof, waive the right to a trail [sic] by jury of any matters arising out of this note or the transactions contemplated hereby.
* * *
 Warrant of attorney: The undersigned, jointly and severally, authorizes any attorney-at-law to appear in any court of record of this note, whether by acceleration or otherwise, waive the issuance and service of process and to confess judgement against them in favor of the Holder for the principal sum due hereon together with Interest, charges, court costs and attorney's fees, and to waive and release all errors, rights of appeal, exemptions and stays of execution. * * *
 WARNING BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGEMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR * * *. [Emphasis added.]
The instrument is signed by the respective parties immediately below this final "warning" paragraph.
Turning now to the subsequent forbearance and security agreement, we again quote exhaustively critical portions of the document:
 THIS FORBEARANCE AND SECURITY AGREEMENT ("Agreement") is made and entered into this 17th day of July, 1997, by and between FIRST COMMUNITY BANK, an Ohio Corporation ("Bank") and WILLIAM W. LAMKIN, an Individual ("Lamkin").
* * *
 WHEREAS, on or about the 6th day of January, 1997, Integrity Supply, Inc., an Ohio Corporation, an entity not a party to this Agreement ("Integrity") executed and delivered to Bank a Cognovit Promissory Note ("Note") in the original amount of Eight Hundred Thousand and 00/100 ($800,000.00), the terms and provisions of which are incorporated herein by reference; and,
 WHEREAS, Lamkin was a co-maker on the Note referred to above; and,
 WHEREAS, on or about the 6th day of January, 1997, in order to secure the performances of all other co-makers under the terms and provisions of the Note, Integrity, Lamkin, TB/WL Limited, LLC, an Ohio Limited Liability Company, an entity not a party to this Agreement ("TB/WL") and Thomas A. Brown, an individual not a party to this Agreement ("Brown") executed and delivered to Bank an Open-End Mortgage ("Mortgage") and such other documents as may have been requisite and necessary to secure the performances of Lamkin and all other co-makers under the terms and provisions of the Note (herein collectively referred to as the "Security Instruments"), the terms and provisions of which are Incorporated herein by reference; and,
* * *
 WHEREAS, on the Note, directly above the signatures of Lamkin and all other co-makers appears a warrant of confession * * *, as required under Ohio Revised Code Section 2323.13(D); and,
 WHEREAS, The Note is now in default for the months of April, May, June and July, 1997, at the current payment of $8,080.64, per month, plus accrued monthly late charges each in the amount of $322.09, for a total payment immediately due and owing, through the date of this Agreement, of $34,010.92; and,
 WHEREAS, because the Note is now in default, the Bank is in a position to seek judgment against Lamkin, individually, as well as any and all other co-makers on the Note, jointly and severally, * * *; and,
 WHEREAS, Lamkin, individually, desires to enter into an agreement with Bank under the terms and provisions of which Bank will forbear from obtaining and executing upon a judgment against Lamkin * * *; and,
 WHEREAS, Lamkin desires to enter into a forbearance agreement with Bank under the terms and conditions of which the Bank will forbear from obtaining and executing upon a judgment against all co-makers on the Note with Bank in order to protect Lamkin's subordinate mortgage lien interest in and to the same real property securing the Bank's Note; and,
 WHEREAS, Bank desires to enter into a forbearance agreement with Lamkin under the terms and conditions of which Bank will forbear from obtaining and executing upon a judgment against all co-makers on the Note with Bank in order to close upon a pending real estate purchase contract under the terms and provisions of which Integrity will sell, on or before August 31, 1997, the Property securing Bank's Note; and,
 WHEREAS, Bank is willing to enter into such an agreement with Lamkin, individually, provided that Lamkin pledges certain monies as additional collateral securing the performance of all co-makers under the Bank's Note.
NOW, THEREFORE, Lamkin and Bank agree as follows:
 On the date this Agreement is executed, Lamkin will provide additional collateral to Bank in the form of pledged funds ("Pledged Funds") in the amount of $42,513.65.
 Bank shall open an account * * * into which Account the Pledged Funds will be deposited and thereafter held by Bank.
 If the closing of the Property referred to above does not occur, as expected, on or before August 31, 1997, then, on September 1, 1997, and on the 1st day of each and every month thereafter until the date of closing on the Property; Lamkin will pay to Bank the amount of Eight Thousand Five Hundred Two and 23/100 ($8,502.23), as and for additional Pledged Funds, which Bank shall deposit into the Account.
 None of the Pledged Funds provided for by this Agreement shall, under any circumstances, be considered a payment by Lamkin, or any other co-maker, on the Note, Mortgage and/or Security Instruments.
 Upon the closing of the Property and provided that the obligation to Bank under the terms and provisions of the Note has been paid in full, the Pledged Funds held in the Account, including all accrued interest, shall be paid over by Bank to Lamkin, provided, however, that if the sale proceeds from the closing of the Property are insufficient to pay the full indebtedness due and owing to Bank by Lamkin and other co-makers under the Note, Mortgage and Security Instruments, Bank shall unilaterally withdraw monies from the Pledged Funds held in the Account in an amount sufficient to fully satisfy the obligation to Bank and Bank shall then pay over to Lamkin the balance of the Pledged Funds remaining in the Account.
 Bank shall provide any information regarding this Agreement and Lamkin's compliance therewith, as may be requested and/or required by Lamkin, in writing.
 Lamkin shall pay all attorney fees incurred by Bank in association with the preparation of this Agreement.
 The Mortgage and Security Instruments referred to herein shall continue to secure the performance of Lamkin, individually, and all other co-makers under the terms and provisions of the Note.
 In consideration of the approval, and for the execution of, this Agreement by Lamkin, Bank shall forbear seeking judgment against Lamkin, as an individual, and all other co-makers, jointly and severally, so long as Lamkin fully adheres to the terms and provisions herein contained.
 THIS AGREEMENT, together with the Note, Mortgage and Security Instruments[,] constitutes the entire agreement between Lamkin and Bank and no prior or contemporaneous representations, whether oral or written, not contained herein, shall be of any effect. Except as expressly provided herein, all terms and provisions of the Note, Mortgage and Security Instruments shall remain in full force and effect.
* * *
 THIS AGREEMENT shall not be modified, changed, or altered in any respect, except in writing, executed by both Bank and Lamkin. [Emphasis added.]
Finally, the agreement concludes with the same "WARNING!!!" language and cognovit provisions as those set forth in the initial note, immediately preceding the signatures of appellant, witnesses and notaries public.
The trial court's lengthy decision evidences its careful consideration of the above provisions of the respective agreements and its thorough analysis of appellant's many theories. First, the court succinctly summarized the essential facts giving rise to the dispute. The closing on the mortgaged property did not occur by August 31, 1997, as appellant had anticipated; as a direct result, appellant then failed to make the required payments on the instruments. Following appellant's failure to satisfy his payment obligations on the promissory note and subsequent forbearance agreement, the bank declared both instruments to be in default and commenced imposition of the 18% default interest rate. The closing on the property ultimately occurred in April 1998.
As a result of the bank's actions, appellant initiated this lawsuit, arguing the various theories referenced infra as to why the bank is not legally and/or equitably entitled to collect the default interest, and why he instead is entitled to certain money damages.
Appellant's version of the facts, which forms the basis for his complaint's various claims for relief, was presented to the trial court via an affidavit appended to his memorandum contra the summary judgment motion. In plaintiff's exhibit C, he averred:
 1. By agreement of First Community Bank and myself, formalized in the Forebearance [sic] Agreement executed on July 17, 1997, no payments were to be made on the $800,000 Note between First Community and TB/WL Limited. Instead, I was to make payments to First Community of Pledged Funds as additional collateral securing the Note, which would be returned to me when the sale of the property originally securing the Note had closed. We agreed that the proceeds of the sale of the building would be used to pay the Note.
 2. When the sale of the building was delayed, First Community, through their loan officer Mary Ann Potter Lewis, instructed me on the amounts they wanted paid under the Forebearance [sic] Agreement.
 3. I paid every amount First Community requested for the next seven months, and even offered to pay in advance. First Community never accepted my offer of advanced payments because they did not think it was necessary.
 4. I did not refer to the Forebearance [sic] Agreement when making those payments, but instead relied on First Community's representations of the correct amounts to pay. I paid every amount they requested.
 5. During this time, First Community never informed me that they wanted me to pay on the Note in addition to the Forebearance [sic] Agreement. First Community never sent me any bill or notice stating that they wanted me to pay additional amounts on the Note. This was because our agreement, formalized in the Forebearance [sic] Agreement, was to cease making payments on the Note.
 6. During my many phone conversations with First Community's loan officer, Ms. Lewis, she never informed me that First Community was expecting payments on the Note in addition to the Forebearance [sic] Agreement. No one from First Community informed me of this position. I did not become aware of the Bank's "double payment" requirement until after this lawsuit was filed and depositions were taken.
 7. In late January 1998, for the first time, First Community informed me, through counsel, that * * * it intended to charge me 18% default interest on the loan, even though I had paid every amount they had requested. This new position was contrary to, and a clear breach of, our agreement formalized in the Forebearance [sic] Agreement.
 8. I attempted to resolve this dispute with First Community's senior vice president, Roger Blair, but he refused to even discuss the matter. Given the bank's anticipatory breach, I discontinued paying on the forebearance [sic] agreement.
 9. The sale of the building finally closed in April 1998. I needed First Community to release its lien on the building for the sale to close. First Community refused to release its lien unless I agreed to 18% default interest on the Note. This was contrary to our agreement formalized in the Forebearance [sic] Agreement, but I was forced to pay this amount because I needed the sale to close. I paid this interest under protest and duress. The bank took advantage of my need to have the sale close and defrauded me by charging 18% default interest.
On appeal, appellant argues several theories as to why the trial court erred in granting defendants' summary judgment motion.
Underlying most of appellant's arguments on appeal is a theory that an "oral modification" regarding his payment obligations occurred as a result of his conversations with the bank's loan officer. The trial court rejected this theory, primarily based upon the Statute of Frauds.
Ohio's Statute of Frauds is codified in two provisions. R.C. 1335.04
provides, in pertinent part:
 No lease * * * or interest * * * in, or out of lands * * * shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it * * *." [Emphasis added.]
R.C. 1335.05 reads, in relevant part:
 No action shall be brought whereby to charge the defendant * * * upon a contract or sale of lands * * * or interest in or concerning them * * * unless the agreement upon which such action is brought * * * is in writing and signed by the party to be charged therewith * * *. [Emphasis added.]
The rationale underlying the Statute of Frauds is well stated in North Coast Cookies, Inc. v. Sweet Temptations, Inc. (1984), 16 Ohio App.3d 342,348:
 This statute serves to ensure that transactions involving a transfer of realty interests are commemorated with sufficient solemnity. A signed writing provides greater assurance that the parties and the public can reliably know when such a transaction occurs. It supports the public policy favoring clarity in determining real estate interests and discourages indefinite or fraudulent claims about such interests.
In Busler v. D H Mfg., Inc. (1992), 81 Ohio App.3d 385, 389, motion to certify record overruled in (1992), 65 Ohio St.3d 1444, this court, citing North Coast Cookies, set forth the requirements necessary to satisfy the Statute of Frauds:
 Any signed memorandum is sufficient to satisfy the Statute of Frauds so long as it (1) identifies the subject matter of the agreement, (2) establishes that a contract has been made, and (3) states the essential terms with reasonable certainty.
The trial court reasoned that the Statute of Frauds is implicated here because appellant granted the bank a written mortgage securing payment by real estate. The court also concluded that the Statute of Frauds was complied with pursuant to the two written instruments executed by the parties; thus, any subsequent agreement was required to be in writing. Because the note and mortgage were incorporated into the terms of the forbearance agreement, we agree.
Appellant next contends that no default interest was due because of purported conflicts which exist between the terms of the two written contracts. He first insists that the 18% default interest rate cannot be assessed because it is not expressly set forth in the forbearance agreement. He further argues that the pursuant to the express terms of the forbearance agreement, no default interest was owed because the latter agreement stated that there was $34,010.92 due and owing as of the date of the agreement.
Appellant relies upon Sites v. Moore (1992), 79 Ohio App.3d 694, 700, motion to certify conflict overruled in (1992), 65 Ohio St.3d 1465. In particular, appellant points to a well-established rule of law: "When the terms of a contract are contradictory, the terms added later supersede the original terms to the extent of the contradiction." Sites at 700, citing Ottery v. Bland (1987), 42 Ohio App.3d 85, 87. We agree that this is a recognized rule of construction. However, Sites is not helpful here because we agree with the trial court that there are no such contradictions between the contracts.
As observed several times by the trial court, all of the terms of the note are expressly and unambiguously incorporated into the latter forbearance agreement, "except as modified" in writing in the agreement or by a subsequent written agreement. There is no evidence which supports a finding that any such modification occurred.
Although the evidence reveals that the default interest rate was not applied to the payments due for April, May, June and July 1997, this fact does not establish a conflict. We agree with the trial court's conclusion that the amount set forth in the agreement simply represents the amount of additional pledged funds which the bank was willing to accept in order to forbear from taking a cognovit judgment on the note. In addition, as noted by the bank, the note contains a "waiver" clause which expressly states that if the bank opts not to exercise any of its rights in one instance, it nonetheless does not waive the right to exercise such rights at a later time. Accordingly, the fact that the bank initially chose not to apply the default interest rate in calculating the amount of additional pledge collateral it was willing to accept did not result in a waiver of its right to do so later.
A plain reading of both documents supports the trial court's conclusion that there are no such conflicts between the two. Therefore, we reject appellant's argument that the forbearance agreement "supersedes" the note with respect to the default interest provision.
Appellant next argues that he was under no further obligation to make payments on the note pursuant to the terms of the forbearance agreement because the latter agreement contained a provision stating that the amount due and outstanding on the note would be paid for by the "sale of the building." Appellant relies upon paragraph 5 of the agreement, which is set forth above in its entirety. We agree with the bank's position that the record simply does not support such a claim.
Contrary to appellant's argument, the referenced provision does not terminate appellant's obligations to pay under the note; it merely sets forth the bank's agreement to forbear from executing on the cognovit provision of the note until the property was sold as long as appellant complied with the terms of the agreement. If the ultimate sale proceeds were insufficient to satisfy the note, then the bank would be entitled to a portion or all of the pledged funds. In contrast, if the sale proceeds exceeded the amount due the bank, the excess would be returned to appellant. Simply stated, we construe this paragraph to mean that even though the note would continue to remain in default, the bank would not exercise its rights under the cognovit provisions as long as appellant complied with the terms of the forbearance agreement.
Appellant also contends that he did not default on the payments required by the forbearance agreement. The record does not support this claim. In fact, appellant admitted in his deposition that he did not make the payments required by the agreements. We agree with the trial court's assessment of the facts that the "payments" to which appellant refers were actually the additional pledged collateral he was obligated to pay pursuant to the forbearance agreement.
Appellant next claims that the trial court erred in granting defendants' summary judgment on his claims for actual fraud, fraud in the inducement, and conspiracy to commit fraud in the inducement.
In order to prevail on a claim of fraud, a plaintiff is required to prove all of the following:
 "(a) a representation or, where there is a duty to disclose, concealment of a fact,
"(b) which is material to the transaction at hand,
 "(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
 "(d) with the intent of misleading another into relying upon it,
 "(e) justifiable reliance upon the representation or concealment, and
 "(f) a resulting injury proximately caused by the reliance."
Watkins v. Cleveland Clinic Found. (1998), 130 Ohio App.3d 262, 277-278, quoting Burr v. Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69, paragraph two of the syllabus. "When seeking money damages, a plaintiff is required to plead and prove these elements by a preponderance of the evidence." Watkins at 278, citing Household Fin. Corp. v. Altenberg (1966), 5 Ohio St.2d 190, syllabus. "Fraud is never presumed, but must instead be affirmatively proved." Watkins, citing Beneficial Fin. Co. v. Smith (1968), 15 Ohio App.2d 208, 210.
Appellant argues that he presented a prima facie case of fraud and, therefore, the trial court erred in granting defendants summary judgment on this claim.
In particular, appellant contends that the evidence showed that the bank, through its loan officer, Ms. Lewis, knowingly made false representations to him regarding the actual amounts due on the note when the bank agreed to accept the pledged funds on the date the forbearance agreement was executed.
As the bank observes, appellant's fraud claim disregards several facts. The forbearance agreement was drafted at appellant's request and for his benefit. The primary purpose of appellant's request was to prevent payments he made from being applied to the note; as discussed above, the payments made pursuant to the forbearance agreement were pledged funds made to serve as additional collateral. Paragraph 4 of the forbearance agreement contains an express provision whereby "none of the pledged funds * * * shall, under any circumstances, be considered a payment by [appellant] * * * on the Note * * *."
Appellant relies upon certain deposition testimony regarding his claims that he and the bank's loan officer had discussions during which she told him, inter alia, what amounts he "actually" needed to pay the bank. Appellant refers to these discussions as "oral modifications" of the previous contracts. The bank representative's deposition does not substantiate appellant's claims. The record does not contain sufficient evidence of any material falsehood made by or on behalf of the bank. In any event, given the plain, unambiguous language of the written documents at issue, we agree with the trial court that these claims do not create or constitute a genuine issue of material fact under the circumstances.
For the same reasons, appellant did not present sufficient evidence of fraud in the inducement or conspiracy to commit fraud in the inducement. In ABM Farms, Inc. v. Woods (1998), 81 Ohio St.3d 498, 502, the Supreme Court of Ohio set forth the elements of fraud in the inducement:
 A claim of fraud in the inducement arises when a party is induced to enter into an agreement through fraud or misrepresentation. * * * In order to prove fraud in the inducement, a plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon that misrepresentation.* * *
Again, appellant has not sufficiently proved the existence of any material falsehood made by or on behalf of the bank. Furthermore, as stated by the Supreme Court of Ohio in Marion Production Credit Assn. v. Cochran (1988), 40 Ohio St.3d 265, 274:
 * * * The Statute of Frauds may not be overcome by a fraudulent inducement claim which alleges that the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing. Accordingly, an oral agreement cannot be enforced in preference to a signed writing which pertains to exactly the same subject matter, yet has different terms.
The trial court did not err in finding that appellant failed to establish a prima facie case of any fraud-related claims and, accordingly, properly granted defendants summary judgment on this issue.
In his final argument under this assignment of error, appellant contends that the trial court erred in granting defendants summary judgment on appellant's claim for breach of contract.
Appellant claims that the purported misrepresentations made by the bank representative modified his payment obligations and, thus, the bank's assessment of the 18% interest rate breached the oral modification. Given that we have already determined that appellant failed to present sufficient evidence of an oral modification, the record does not establish a breach by the bank. The trial court concluded, and we concur, that the evidence supports the bank's position that it fulfilled all of its obligations pursuant to the express terms of both agreements.
In sum, support for appellant's blanket claim that he "never agreed to" an 18% interest rate requires a finding that he signed documents he did not read carefully and/or made certain careless, erroneous assumptions about his alleged "real" obligations which were never reduced to writing. Again, the note specifically and unequivocally provides for the application of an 18% interest rate in the event of a default. Significantly, as discussed above, the forbearance agreement expressly incorporates all the terms and conditions of the note "except as modified" therein; if such modifications occurred, they were to be in writing and signed by both parties. It is undisputed that the default interest rate was never so modified.
The bank had the option to invoke the cognovit provisions contained in both the note and forbearance agreement, but it never did. With respect to appellant's contentions that he did, in fact, make certain timely payments, the record supports the trial court's conclusion that the "payments" were, in reality, simply the "additional pledged collateral" and late fees as required in the forbearance agreement.
The record supports the trial court's ultimate conclusion that the bank, at the time of the closing, received no more than that to which it was entitled pursuant to the terms of the note and forbearance agreement. Contrary to appellant's primary argument on appeal, the record reveals no question of material fact requiring resolution by a jury.
Based upon our thorough review of the record, the trial court properly granted summary judgment to defendants. The first assignment of error is overruled.
In his second assignment of error, appellant contends that the trial court erred in failing to consider "all of the relevant deposition testimony." In particular, appellant asserts that the trial court failed to consider his testimony regarding alleged misrepresentations by the bank and/or its agent, and the "payments" he made pursuant to the forbearance agreement. Given our lengthy discussion above and disposition of substantively identical issues, this argument is without merit. The second assignment of error is overruled.
In his third assignment of error, appellant argues that the trial court abused its discretion by refusing to read the final fourteen pages of his memorandum contra the motion for summary judgment.
In its decision granting summary judgment, the trial court explained its reason for refusing to read the balance of appellant's memorandum. Citing Loc.R. 12.01, the trial court observed: "'[M]emorandum briefs shall not exceed 15 pages exclusive of any supporting documents. Any * * * opposing briefs exceeding 15 pages shall not be accepted for filing without prior leave of the Court.'" The trial court refused to consider the final fourteen pages of appellant's memorandum because it was twenty-nine pages in length and appellant failed to seek prior leave of court in accordance with local rule. Under the circumstances, the trial court did not abuse its discretion in refusing to read that portion of the memorandum filed out of rule.[1] The third assignment of error is overruled.
Having overruled the assignments of error, the judgment of the trial court is affirmed.
 ______________ TYACK, J.
LAZARUS, J., concurs.
BROWN, J., dissents.
[1] We note that the trial court subjected defendants' reply brief to identical treatment. Pursuant to local rule, such replies are limited to seven pages in the absence of prior leave of court to exceed the limit. Defendants' reply was eight pages and, since no leave was sought, the court similarly refused to consider the balance of the brief.