SITES et al., Appellees,

v.

MOORE, d.b.a. Action Construction Company, Appellant.

[Cite as *Sites v. Moore* (1992), 79 Ohio App.3d 694.]

Court of Appeals of Ohio,
Lawrence County.

No. 91–CA–11.

Decided April 30, 1992.

*Randall L. Lambert,* for appellees.

*David Reid Dillon,* for appellant.

HARSHA, Judge.

This is an appeal from a judgment of the Court of Common Pleas of Lawrence County which adopted the recommendations of the referee and awarded appellees a judgment in the amount of $11,808.42 plus interest. The case arose out of a construction contract pursuant to which appellant, Gary A. Moore, d.b.a. Action Construction Company, was to build a substantial addition onto the home of appellees Steven D. Sites et al. Appellant raises the following assignments of error:

"I. The trial court erred in finding that the requirements placed on the contract by Lawrence Federal modified the contract of the parties requiring defendant-appellant to do additional work without compensation by plaintiffs-appellants [*sic*].

"II. The trial court erred in its finding that defendant-appellant breached the contract between the parties.

"III. The trial court erred in dismissing the counterclaim of defendant-appellant.

"IV. The trial court erred in its measure of damages."

Through their complaint and amended complaints, appellees asserted two causes of action against appellant. The first alleged that appellees had contracted with appellant to remodel appellees' house at a contract price of $32,995.15. This price was to include all labor and materials. Appellees further claimed they paid appellant approximately $22,000 without appellant's performing a proportionate amount of work. Appellant allegedly refused to purchase materials with the money and refused to complete construction. Appellees assert that appellant's actions constitute a breach of contract, including a failure to perform in a "workmanlike manner." They allege they are damaged in that they will have to complete the construction at an increased cost.

The second cause of action alleged appellant intentionally, knowingly, recklessly, and willfully filed a false affidavit for a mechanic's lien. This allegedly resulted in a loss of use and enjoyment of their property and further

caused them to lose financing to complete the remodeling project. Appellees sought $40,000 compensatory damages and $10,000 punitive damages.

Appellant filed a counterclaim against appellees. It too alleged a contract existed between the parties. He asserted that appellees requested and he acquiesced in making "substantial and numerous" changes to the work while it was in progress. Appellant recognized the fact that he had received $24,490 for work completed and further sought $41,943.64 in damages. This figure apparently was arrived at by adding the amount unpaid under the contract ($8,505.15) and the alleged value of the "changes" appellant performed ($33,438.49).

A hearing was held before a referee. Following four days of testimony, the referee issued a report containing the following findings and recommendations. On July 7, 1987, the parties entered into a contract to remodel appellees' home for the price of $32,995.15. Incorporated into the contract was a description of materials bearing appellant's signature and dated July 1, 1987. Also incorporated into the contract was a proposal submitted by appellant to appellees bearing the signatures of both appellant and appellee, Steven Sites, and dated April 9, 1987. The parties discovered, after entering into the contract, that they were under a mutual mistake of fact regarding the size of the existing structure. As a result, they entered into a supplemental agreement for an additional 118.29 square feet to be constructed at a cost of an additional $3,075.54. This sum was to cover all expenses, materials and labor related to the additional area. The referee found the total contract price was "$36,070.60 [*sic*]." This supplemental agreement was set forth in an affidavit signed by appellant.

The referee also found that prior to the beginning of "actual construction," appellant was notified that appellees' lender required minimum building standards. He found that many of these standards were "simply minimum standards of workmanlike procedures and practices that the homeowner has a right to expect," regardless of whether the homeowner was aware of their necessity.

Further, the referee found that on November 5, 1987, appellees requested that a window that was to be installed be changed to a set of doors at appellees' expense. As a result of this change, the referee found that appellant left the job site without completing the work for which appellees contracted. Appellant received roughly two-thirds of the contract price without completing nearly that amount of work on the project. The referee determined the evidence showed that appellant was "disgusted" with the project due to unanticipated delays and cost overruns. The referee held that it was appellant's duty to anticipate such things and build them into his bid.

He also found (contrary to appellant's position that if appellees wanted an item or procedure in the contract, they should have expressly incorporated it) that a homeowner was not required to specify basic quality and design factors to be included in a construction contract.

The referee found appellees paid appellant $24,330. They paid $9,269.94 to other contractors to complete work and provide materials required to fulfill the contract. They also provided their own labor and materials at a cost of $9,821.86. There were also additional costs of completion in the amount of $3,467.26. Thus, the total cost to complete the contract was $22,559.06. From this figure, the referee deducted monies remaining unpaid on the total contract ($11,740.60) for resulting damages to appellees in the amount of $11,808.42.[1]

In regard to the second cause of action, the referee found appellant knew or recklessly disregarded the fact that his affidavit for a mechanic's lien, claiming a lien of $41,943.64 upon appellees' realty, was false. Finding that appellant's claim for the money was inaccurate, the referee recommended that the lien be vacated. He also recommended, based upon the work appellant performed and the money he received in return, that the counterclaim be dismissed. Ultimately, the court adopted the referee's report and entered judgment for appellees in the amount of $11,808.42 plus interest and costs. Appellant appeals that judgment.

Appellant's first assignment of error asserts that the trial court erred by finding that the minimum building standards required by appellees' lender modified the contract. This is a question of law upon which, as a reviewing court, we afford the trial court no deference. *Latina v. Woodpath Dev. Co.* (1991), 57 Ohio St.3d 212, 214, 567 N.E.2d 262, 264–265. Appellant first argues that the clear and unambiguous language of the contract prevents the introduction of evidence of the custom of contractors to receive building standards from the lender. He also argues that the requirement that construction be completed in a workmanlike manner does not justify the court in requiring appellant to adhere to the lender's standards and thus force him to provide, without added compensation, labor and materials beyond those bargained for in the contract.

Prior to any further complication of the issues, a review of the contract documents is warranted. The primary contract, dated July 7, 1987 and signed by appellant and Mr. Sites, provides in pertinent portions:

---

1. It appears that there may be mathematical discrepancies in the damage calculations. No assertion of error has been raised in this regard and thus we do not address that question. If indeed there is no basis for these discrepancies, any error is now waived.

"Article 1. The contractor agrees to provide all materials as specified and to perform all the lobor [*sic*] shown on the working drawings and described in, the specifications for the erection of a dwelling for the owner, Mr. and Mrs. Steve Sites at 845 Marion Pike, City of Coal Grove, County of Lawrence Co. [*sic*], state of Ohio.

"Article 2. The owner agrees to pay the contractor in current funds for, the performance of the contract thirty-two thousand nine hundred ninety-five and 15/100 dollars ($32,995.15), subject to any additions to the general conditions of the contract agreed, upon in writing, and to make payments on account hereof upon presentation, of proper lien waivers, as the work progresses and payments to be made, as follows; payment of $2,500.00 at renovation, payment of ⅓ on completion of foundation. [*sic*] payment of ⅓ on completion of hip roof. [*sic*] payment of ⅓ on final completion & inspection.

"Article 3. The contractor and owner agree that the general conditions, the specifications and the drawings, together with this agreement form the contract, as if hereto attached."

The contract incorporates the specifications including the proposal dated April 9, 1987 and signed by appellant and Mr. Sites. That proposal states in part:

"All material is guaranteed to be as specified, and the above work to be performed in accordance with the drawings and specifications submitted for above work and completed in a substantial workmanlike manner for the sum of _____ Dollars ($32,995.15).

" * * *

"Any alteration or deviation from above specifications involving extra costs, will be executed only upon written orders, and will become an extra charge over and above the estimate."

Finally, the incorporated description of materials, in its instructions, includes this provision:

"4. The construction shall be completed in compliance with the related drawings and specifications, as amended during processing. The specifications include this Description of Materials *and the applicable Minimum Construction Requirements.*" (Emphasis added.)

Appellant's arguments in the first assignment of error assume that the minimum requirements of the lender are not expressly incorporated into the contract. The contract, however, does incorporate those requirements. The testimony at the hearing revealed that the requirements themselves were received by appellant prior to the time when he began erecting the new

structure. All the parties signed the requirements at that time. As the requirements were within appellant's constructive, if not actual, knowledge at the time he entered the contract, and as they were a part of the original contract, there was no need for *additional* consideration to make the requirements enforceable against appellant by appellees.

■ It is uncontroverted that some of the minimum requirements conflict with the other specifications expressed in the contract. For example, the minimum requirements call for 2″ × 6″ ceiling joists while the description of materials and proposal call for 2″ × 4″ joists. Thus, the contract contains conflicting terms. Appellant was the author of those terms and they will be construed against him. In *McKay Mach. Co. v. Rodman* (1967), 11 Ohio St.2d 77, 40 O.O.2d 87, 228 N.E.2d 304, the Ohio Supreme Court held that it "is well established that where there is doubt or ambiguity in the language of a contract it will be construed strictly against the party who prepared it. *Smith, Admr., v. Eliza Jennings Home*, 176 Ohio St. 351 [27 O.O.2d 305, 199 N.E.2d 733]. In other words, he who speaks must speak plainly or the other party may explain to his own advantage." *Rodman, supra*, 11 Ohio St.2d at 80, 40 O.O.2d at 89, 228 N.E.2d at 307. When the terms of a contract are contradictory, the terms added later supersede the original terms to the extent of the contradiction. *Ottery v. Bland* (1987), 42 Ohio App.3d 85, 87, 536 N.E.2d 651, 654; *Ford Motor Co. v. John L. Frazier & Sons Co.* (1964), 8 Ohio App.2d 158, 161, 95 Ohio Law Abs. 164, 167–168, 29 O.O.2d 379, 381, 196 N.E.2d 335, 337–338.

■ The foregoing rules of interpretation lead to the conclusion that appellant is bound by the minimum requirements set by the lender. This conclusion is further supported by the fact that he signed a certification indicating that they would be followed and by the fact that their existence was recognized in the contract documents. It might be argued that the contradictory terms precluded the parties from having a meeting of the minds. However, such is not always the case. See *Ottery, supra*, 42 Ohio App.3d at 88, 536 N.E.2d at 655. In this case, the contract indicates that the parties agreed that the minimum building standards would be incorporated into the contract even if the particular standards were then unknown.

As the parties contracted for the construction of the addition to be in accordance with the lender's minimum requirements, appellant's arguments with respect to the first assignment of error are irrelevant. The clear and unambiguous language of the contract documents indicates the minimum requirements are part of the contract. As the minimum requirements are part of the contract, appellant was not required by the judgment to provide

labor and materials beyond the scope of those contemplated by the contract. Appellant's first assignment of error is not well taken.

▮ In his second assignment of error, appellant argues that the trial court's determination that appellant was the breaching party was contrary to the manifest weight of the evidence. In a civil case, a reviewing court will not reverse a judgment as being contrary to the manifest weight of the evidence so long as there is some competent, credible evidence supporting the judgment. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276; *State ex rel. Pizza v. Strope* (1990), 54 Ohio St.3d 41, 46, 560 N.E.2d 765, 769–770; *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 96, 566 N.E.2d 154, 159.

Mr. Sites testified that on Monday, November 2, 1987, he and his wife conveyed their displeasure to appellant regarding the slow progress of the project. They also told him that French doors were to be installed, at appellees' cost, in place of one of the proposed windows. On the following Thursday, appellant began installing the window rather than the doors. Mr. Sites told him to stop and continue with another window until the doors were obtained. Appellant was still working on the house when Mr. Sites left for work. Mr. Sites returned shortly, at his wife's request, to discover appellant had packed his tools and left the job. Appellant never returned. Appellant and one of his employees testified that Mr. Sites had ordered them off the job.

The ultimate determination of whether appellant breached the contract by leaving the job or whether appellee prevented appellant from completing the contract by ordering him off the premises depends upon whose testimony the court believed. We give deference to the determination of the trier of fact as he was/is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., supra,* 10 Ohio St.3d at 80, 10 OBR at 410–411, 461 N.E.2d at 1276. We find that based upon the testimony of Mr. Sites, there is some competent, credible evidence upon which the trial court could have found that appellant breached the contract. Accordingly, appellant's second assignment of error is overruled.

▮ Appellant's third assignment of error asserts that he was entitled to recover expectancy damages as well as the cost of "extras" he provided beyond the contract requirements. First and foremost, a breaching party is not entitled to collect damages from a non-breaching party. Second, the contract and incorporated proposal both expressly required written change orders for any deviation from the contract. Appellant presented no such written orders and is thus not entitled to recover for the "extras" he alleges he provided. Cf. *Frantz v. VanGunten* (1987), 36 Ohio App.3d 96, 99–100,

521 N.E.2d 506, 509–511, holding that the requirement that change orders be written may be deemed waived upon a showing by clear and convincing evidence that the changes were made with the knowledge and participation of all concerned. The court below properly dismissed appellant's counterclaim and, thus, appellant's third assignment of error is not well taken.

Appellant's final assignment of error asserts that the trial court employed an improper measure of damages in that it awarded appellees compensation for their own labor expended to help complete the construction. Appellant argues that appellees did not seek such damages in their complaint and that they sought compensation for their time at a rate charged by *professional* carpenters. Appellant asserts that appellees are not liable to anyone for the costs of their own labor and are therefore not entitled to recover for it. Appellant also argues the court erred in awarding damages for labor performed by Mr. Sites' father when no payment was made to him and appellees owed him nothing for the labor. Finally, appellant argues the court erred by awarding damages for a four-ton heat pump when the specifications called for a three-ton unit.

In the case of a construction contract breached by the contractor, the proper measure of damages is "the reasonable cost of placing the building in the condition contemplated by the parties at the time they entered into the contract." *Jones v. Honchell* (1984), 14 Ohio App.3d 120, 123, 14 OBR 135, 138, 470 N.E.2d 219, 222. Appellees are entitled to have what they contracted for or its equivalent. *Platner v. Herwald* (1984), 20 Ohio App.3d 341, 342, 20 OBR 445, 445–446, 486 N.E.2d 202, 203. This logically includes the reasonable value of their own services employed as a substitute for appellant in his absence and breach of contract. Had appellant not left the job with the majority of the contract monies, appellees could have hired other contractors to complete the work they did themselves. Appellant further compounded the problem when he filed an affidavit for a mechanic's lien. This placed the remainder of appellees' loan funds beyond their reach. Given the circumstances and the condition of appellees' house, they exercised the only means available to remedy appellant's breach and mitigate their damages. Appellant must not be permitted to profit from appellees' completion of the very labor he contracted to complete. If we denied appellees the value of their services, they would not be receiving that for which they contracted or its equivalent. Since the labor to complete the contract was not an item of special damages, there was no requirement that it be specially pled.

Appellant's claim that the rate charged for appellees' labor is excessive is not supported by the evidence. Appellant was charging his own labor at the rate of $25 per hour. Appellees were awarded only forty percent of that

amount. Appellant also complains that appellees neither kept nor presented any records of the time they expended. This goes to the weight of the evidence. Appellees testified that they actually spent more time than for which they sought damages. The trial court properly awarded damages as compensation for appellees' labor and there was some competent, credible evidence supporting that award.

Appellant also complains that appellees received damages for materials not contemplated by the contract, such as a four-ton heat pump rather than a three-ton unit. Appellant contends that the heat pump was only to service the new portion of the home. There was testimony, including that of appellant's employee, that the heat pump was to serve the entire home. He testified that he disconnected a floor furnace in the existing structure because it would no longer be used. There was also testimony that in order to adequately serve the entire home, a four-ton unit was necessary. There was some competent, credible evidence supporting the award of damages based upon the purchase and installation of a four-ton heat pump.

Finally, appellant contends that appellees were not entitled to recover for electrical work done by Mr. Sites' father. The testimony reveals that appellee sought $300 in damages for labor related to electrical work. Appellee testified that he was claiming nothing for his father's labor. The $300 was for his labor in assisting his father. As previously stated, under these circumstances, appellees' personal labor is compensable. Accordingly, appellant's fourth assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PETER B. ABELE, J., concurs.

STEPHENSON, P.J., concurs in part and dissents in part.

STEPHENSON, Presiding Judge, concurring in part and dissenting in part.

I concur in the majority opinion except for its treatment of appellant's argument under his fourth assignment of error that appellees were improperly awarded damages for materials not contemplated by the contract, namely a four-ton heat pump.

As the majority correctly states, the interpretation of a written agreement is a matter of law for the court. *Latina v. Woodpath Dev. Co.* (1991), 57 Ohio St.3d 212, 214, 567 N.E.2d 262, 264–265; *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146. As the majority further notes, the proper measure of damages is the cost of placing the building in the condition contemplated by the contract. In the case at bar, it is

clear that the parties contracted for a three-ton heat pump rather than a four-ton unit. Therefore, the trial court erred in awarding damages to appellees for the four-ton heat pump rather than that which was contemplated by the terms of the contract itself.

The contract between the parties incorporates the description of materials. Therein, under "23. HEATING," the contract provides that appellees' existing heating system is to be saved and that a "3–Ton Amana Heat Pump" is to be installed. In addition, the proposal provides for installation of a "3–ton Amana heat pump with a.c." Appellees are entitled to the benefit of their bargain, but no more.

It is true that appellees testified they did not intend to retain their existing heating system and intended, rather, to install a new system to heat both the original structure and the new addition. There was also testimony adduced to the effect that a three-ton unit would be inadequate to supply a house the size of appellee's, and that a four-ton unit would be required. However, where the terms of a contract are clear and unambiguous, this court cannot find a different intent from that which is expressed in the contract. *E.S. Preston Assoc., Inc. v. Preston* (1986), 24 Ohio St.3d 7, 10, 24 OBR 5, 8–9, 492 N.E.2d 441, 445; *Buckeye Pipe Line Co., supra,* 53 Ohio St.2d at 246, 7 O.O.3d at 406, 374 N.E.2d at 149. Where a contract is plain and unambiguous on its face, it does not become ambiguous by reason of the fact that in its operation it may work hardship upon one of the parties. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 55, 544 N.E.2d 920, 924; *Seringetti Constr. Co. v. Cincinnati* (1988), 51 Ohio App.3d 1, 553 N.E.2d 1371.

As the agreement between the parties contemplates retaining the appellees' existing heating system and adding a three-ton heat pump, it was error for the court to award damages for the cost of a four-ton heat pump.

I would remand for an adjustment of damages accordingly.