OPINION
Appellant, Christian A. Weiss Construction Co., Inc., d.b.a. Decksmith Structures, Inc., appeals from a final judgment of the Lake County Court of Common Pleas rendered in favor of appellee, Jerome A. Lesak, d.b.a. J.L. Land Development, following a trial by jury.[1]
The following facts are relevant to this appeal. In December 1996, appellant entered into a contract with William and Connie Gergel ("the Gergels") to construct a new deck and screened-in porch at the rear of their home located at 10085 Stone Hollow Road. In addition to building the deck and screened-in porch, appellant also agreed to replace an existing retaining wall at the rear of the property with a new one to prevent soil from sliding down the hillside.
To help meet its obligations, appellant sub-contracted with appellee to build the new wall. Their written agreement provided that appellee would erect a retaining wall, primarily made up of railroad ties, that would be sixty feet long and five feet tall. The contract also provided that the wall would be constructed in accordance with a plan provided by appellant. Furthermore, appellee agreed to extend the down spouts, drains, gutters, and footer drains at the rear of the home out beyond the new retaining wall. According to the terms of the contract, the total cost of the project would be $14,000.
Appellee completed the wall, and appellant constructed the new deck and screened-in porch. A short time thereafter, the wall began to shift. Appellant contacted appellee, who agreed to inspect the wall and make any necessary repairs. These repairs, unfortunately, did not correct the problem and the retaining wall continued to move. Appellee returned to the Gergels' home to make additional repairs, but these also failed to solve the problem.
After this last attempt, appellee told appellant that the weight of the deck and screened-in porch was causing the wall to buckle. As a result, appellee informed appellant that he was no longer going to work on the project because he believed he had fully complied with his contractual obligations.
After completing a more thorough exploratory excavation, appellant decided to tear down the wall built by appellee and construct a new one. In doing so, appellant used the same design that appellee had been directed to follow.
On January 12, 1998, appellee, along with his wife, filed a complaint in the Lake County Court of Common Pleas against appellant and Christian Weiss ("Weiss"), the company's president, for an alleged physical assault committed by Weiss. Appellant filed an answer on August 13, 1998, denying the allegations in the complaint. Included with the answer was a counterclaim against appellee asserting that he had breached their contract by not building the wall according to specifications, and that appellee had failed to complete the project in a workmanlike manner.
Appellee filed an answer to appellant's counterclaim, and on June 11, 1999, voluntarily dismissed his original complaint of assault pursuant to Civ.R. 41(A)(1)(a). The case then proceeded to trial solely on appellant's counterclaim.
A jury trial began on June 15, 1999. At the close of all the evidence, appellant moved for a directed verdict, which was immediately denied by the trial court. On June 17, 1999, the jury returned a verdict in favor of appellee on both claims. Appellant then moved for a judgment notwithstanding the verdict, or, in the alternative, for a new trial. The trial court entered a judgment entry journalizing the verdicts on August 3, 1999, and in an abbreviated judgment entry filed on August 10, 1999, denied both of appellant's motions.
From this judgment entry, appellant filed a timely notice of appeal. The company now raises the following assignments of error for our consideration:
 "[1.] The trial court erred to the prejudice of Appellant Weiss when it denied its motion for directed verdict made at the conclusion of the evidence.
 "[2.] The jury verdict upon which judgment was entered was against the manifest weight of the evidence and contrary to law.
 "[3.] The trial court erred to the prejudice of Appellant Weiss when it denied its motion for judgment notwithstanding the verdict.
 "[4.] The trial court erred to the prejudice of Appellant Weiss and abused its discretion when it denied its motion for new trial."
 Because we find appellant's second assignment of error dispositive, we will address it first. It is well- established that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus.
As the trier of fact is in the best position to view the witnesses and their demeanor, in making a determination that a judgment is against the manifest weight of the evidence, this court is mindful that we must indulge every reasonable presumption in favor of the lower court's judgment and findings of fact. Shemo v. Mayfield Hts. (2000),88 Ohio St.3d 7, 10; Gerijo, Inc. v. Fairfield (1994), 70 Ohio St.3d 223,226.
In other words, "an appellate court may not simply substitute its judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court findings." State ex rel.Celebrezze v. Environmental Enterprises, Inc. (1990), 53 Ohio St.3d 147,154. Thus, in the event that the evidence is reasonably susceptible to more than one interpretation, this court must construe it consistently with the lower court's judgment. Gerijo at 226; Karches v. Cincinnati
(1988), 38 Ohio St.3d 12, 19.
In accordance with the foregoing authority, we must decide whether there was competent, credible evidence to support the jury's verdicts. The testimony of George Davis ("Davis"), appellant's vice-president, was that after appellant entered into the contract with the Gergels, the company contacted appellee about constructing the new retaining wall. Davis was familiar with appellee's work because they had worked together in the past on other projects.
Davis briefed appellee on the project and had him visit the Gergels' home to get a general idea as to the job's difficulty. Davis testified that appellee made several suggestions with respect to the type of wall to build and how to actually construct it. Based on these suggestions, appellant had an employee draw up the plans using the company's computer software.
According to Davis, appellee was well aware of what the job required and how to carry out his responsibilities. Although Davis himself did not visit the site, he related that a representative of appellant would occasionally visit the Gergels' home to assess the project's progress.
After appellee completed the retaining wall, appellant was then able to build the deck and screened-in porch. However, shortly thereafter, Davis testified that he received a call from the Gergels complaining that there was a problem with the wall. Davis contacted appellee who made an inspection. From this inspection, appellee concluded that there was an erosion problem caused by a lack of vegetation. As a result, he installed burlap to prevent the soil from sliding any further.
Davis further testified that several months later, he received another call from the Gergels concerning the wall. Davis subsequently called appellee, who visited the home once again. Not seeing any obvious problems, appellee excavated behind the retaining wall and tried to make some additional corrections. Later that evening, however, appellee called Davis and told him that the failure was not his fault, and that he was finished with the project.
The next day, Davis called EDP Consultants to get an opinion as to why the wall was failing. Davis testified that Alan Esser ("Esser"), a geotechnical engineer, went out to the job site and made several recommendations. Appellant then completely excavated the area behind the wall and found numerous deficiencies in the wall's construction. Based on Esser's recommendations, appellant decided to tear down the wall constructed by appellee and construct a new one following the original plan, as opposed to a more elaborate model.
Davis' testimony was substantially corroborated by that of Weiss, appellant's president. Weiss, a mechanical engineer, told the jury that because appellant was primarily involved with residential remodeling, the company decided to contact appellee about building the new retaining wall. According to Weiss, appellee was informed by Davis that the deck and screened-in porch would also be constructed behind the Gergel's home and had even provided appellant with several sketches and details to help design a functional wall.
Appellant also entered into evidence Esser's videotape deposition. In this deposition, Esser testified that he was asked by Davis to determine why the wall had failed. To do this, Esser went to the site and examined the wall. There, he noticed that the wall had "kicked out" at the bottom, causing the hillside behind the home to shift. When the wall was completely excavated, Esser noted several deficiencies in its construction.
First, Esser could immediately see that the railroad ties forming the wall were not in the ground, and instead were resting on top of the soil. He also noticed that the deadmen used by appellee in building the wall did not match those in the design.[2] Specifically, none of the deadmen were seven feet long, which was the recommended size, and instead of being one piece, appellee had cobbled together several smaller pieces of wood. This was important because to provide any support, the deadmen had to extend beyond the triangular zone of soil behind the wall that wants to shift. If this is not done, the deadmen would move with the wall and serve no purpose.
Moreover, Esser also determined that the deadmen were irregularly spaced throughout the wall instead of one every eight to ten feet. In addition, the holes in which the deadmen were placed were not backfilled with concrete as required by the plans.
Esser also testified that the deadmen should have been connected to vertical piers buried forty-two inches into virgin soil.[3] He said it was important for the vertical piers to be imbedded in virgin soil because this type of soil is the only material that has the ability to counteract the lateral load imposed by the hillside wanting to push the retaining wall over. Here, however, Esser testified that the vertical piers were resting on virgin soil instead of imbedded in it, thus providing minimal support. Also, it appeared that none of the vertical piers had any concrete to help anchor them, as required in the plan.
It was also apparent to Esser that appellee had failed to dump enough gravel behind the wall to fill any void spaces. Without the gravel, water would collect behind the wall causing an increase in hydrostatic pressure. Esser's examination found only a small amount of gravel at the bottom of the wall on the inside surface around a drainpipe, whereas the plan required gravel to fill all the way to the top of the wall.
Esser also discovered that two drainpipes leading from the home had not been extended out beyond the wall. These drainpipes were discharging water in the area where the wall had originally failed, thus increasing the hydrostatic pressure at that point.
Due to the significant variations, Esser testified that it was his opinion that appellee had failed to build the wall according to the plans. In addition, Esser believed that the job had not been completed in a workmanlike manner, and that the movement of the wall allowed the soil around the deck to shift causing its supports to move.
Appellee was his only witness at trial. He told the jury that he had not provided appellant with any retaining wall sketches, and that he had nothing to do with the wall's design. Furthermore, appellee testified that Davis had never informed him that the deck was going to be built at the rear of the house so close to the wall, and that when he found out, he complained to Davis.
As for the wall itself, appellee admitted that it was not constructed exactly according to the provided plan.[4] Rather, he testified that the wall which was ultimately built was better than the one he claimed was designed by appellant, and that any alleged deviations, omissions, or defects in the wall's construction were not so serious as to defeat the purpose of the parties' agreement. In other words, he argued that he had substantially complied with the contract.[5]
Essentially, appellee blamed the wall's failure on the location of the deck. According to his testimony, the weight of the deck, and the fact that the vertical supports holding up the deck were not completely filled, caused the retaining wall to move. Under these circumstances, appellee believed that he had done the best job possible. In fact, appellee went so far as to accuse appellant of fraud with respect to the condition of the wall at the time it was viewed by Esser.[6]
Despite all of his allegations, appellee never specifically addressed the factual findings made by Esser, nor did he challenge the conclusions derived from those findings. Instead, he tried to justify the deviations and shift the blame for the wall's condition by alleging fraudulent or dishonest conduct on the part of appellant and the company's employees.
Moreover, appellee never provided a competent and credible explanation as to why his deviations did not lead to the results alleged by Esser. In fact, he was almost non-responsive when questioned about why he believed the wall, as constructed, was suitable for the intended purpose when Esser found several omissions or deviations which he felt were critical.[7]
After carefully reviewing the record in the present case, we conclude that the jury's verdict with respect to appellant's claim for breach of contract was not supported by any competent, credible evidence demonstrating that appellee had fully complied with the parties' contract. Here, regardless of who initiated the design, appellee admitted that he did not build the retaining wall according to appellant's specifications. Even if he had a valid claim that the wall constructed was actually better than the proposed design, this testimony is not relevant when determining if he fulfilled the requirements of the contract. Put another way, the question before the jury was not whether appellee's wall was better than the proposed one. Neither was it whether the wall would fail even if built exactly to specification.[8] Rather, the jury had to decide whether or not appellee had substantially complied with the written agreement. The unrefuted evidence shows that he did not.[9]
In addition to the breach of contract claim, appellant also brought a cause of action alleging that appellee had performed the job in an unworkmanlike or negligent manner. Thus, the trial court separately instructed the jury on each claim and provided the jury with two separate verdict forms.
In Ohio, builders and contractors are required to perform their services in a workmanlike manner. McCray v. Clinton Cty. HomeImprovement (1998), 125 Ohio App.3d 521, 525; Chess v. Scott (Dec. 23, 1994), Portage App. No. 94-P-0044, unreported, at 12, 1994 Ohio App. LEXIS 5907. When a builder or contractor fails to do so, the injured party may sue under a negligent performance theory.
Having said that, we conclude that the jury's verdict with regard to appellant's claim that appellee failed to complete the wall in a workmanlike manner was also not supported by competent, credible evidence. To the contrary, the evidence actually demonstrated, among other things, the following: (1) appellee had failed to carry all of the drainpipes out past the new wall; (2) the railroad ties were not buried in the ground; (3) the vertical piers used to support the deadmen were not mounted in virgin soil; (4) the deadmen were not long enough to support the wall as built; (5) concrete was not used to back fill the holes in which the deadmen and vertical piers were placed; and (6) appellee did not use enough gravel to fill the spaces around the wall completely to the top.
Without question, there were several evidential conflicts at trial that could have been resolved in appellee's favor. For example, whether appellee knew where the deck was going to be located, or who actually prepared the plans for the retaining wall, were all issues for the jury to decide. Moreover, the fact that appellant had the Gergels sign a limited warranty in which they acknowledged that a different design would be better for the soil conditions, and that the reconstructed wall had begun to move at the time of trial, were also relevant considerations. Nevertheless, these issues went to damages and should have had no bearing on whether or not appellee breached the contract or completed the job in a workmanlike manner.[10]
As an appellate court, we are extremely reluctant to interfere with the decision of a jury. Moreover, we recognize that the trier of fact is in the best position to view witnesses and judge their credibility. This court is also aware that, as a reviewing court, we are to presume that the findings made by the trier of fact were, indeed, correct. SeasonsCoal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 79-80. Nevertheless, under the facts as presented in the case at bar, we conclude that the jury's verdicts were not supported by competent, credible evidence. While appellee may argue that he substantially complied with the parties' agreement, and that the job was completed in accordance with customary standards, the record does not support this position. Simply stated, there is no reliable evidence in the record from which the jury could have logically reached the result it did. Appellant's second assignment of error, therefore, has merit.
Based on our disposition of the second assignment of error, appellant's fourth assignment of error also has merit. However, any analysis with respect to the company's remaining two assignments of error are rendered moot and need not be addressed. App.R. 12(A)(1)(c). In accordance with the foregoing analysis, the judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.
 __________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P. J., NADER, J., concur.
[1] Although the original complaint filed in this matter designated appellant's name as "Weiss Construction Co., Inc.", a review of the record shows that the company's name is actually spelled Christian A. Weiss Construction Co., Inc. Likewise, the original complaint also incorrectly listed Decksmith Structures, Inc. as "Decksmith, Inc." We will, however, use the correct spellings throughout this opinion.
[2] Deadmen are a type of anchorage used to provide lateral support.
[3] Virgin soil is soil that has been previously undisturbed. In contrast, fill soil is soil that has been either moved or pushed into place. Because fill soil is more compressible, it provides less support and will eventually cause settlement.
[4] For example, during cross-examination, the following exchange occurred:
 "Q. I believe we also agree — and when I say that wall I'm referring to Exhibit B, so the record is clear — we would agree that you did not build Exhibit B; is that correct?
 "A. [Appellee] No, I did not build the exact wall that's depicted in that picture."
[5] The jury was instructed on the issue of substantial compliance.
[6] Additionally, throughout much his testimony, appellee was very defensive and accused Davis and Weiss of lying about the wall's condition and various other matters.
[7] For example, when asked about the two drainpipes that had not been extended out beyond the retaining wall, appellee only replied that he "didn't miss any drains."
[8] Certainly, however, this evidence is relevant to the issue of any damage caused by the breach.
[9] Esser did testify that the specifications for the retaining wall were not the best ones suited for the condition of the soil at the job site. Moreover, there was also testimony that the wall that appellant constructed was showing signs of failure at the time of trial. As we previously noted, however, these facts have no bearing on whether or not appellee breached the contract. Instead, these are issues that would go toward the amount of damages, if any, appellant may be entitled to receive.
[10] The result in this case may have been different if this had been a situation where appellee was given the discretion to design and build a functional wall on his own. However, because appellee was provided with specific plans that included certain requirements, he was obligated to follow those plans, absent an agreement to the contrary. Under the facts of this case, appellee did not have the unilateral authority to modify the parties' agreement. See, e.g., Sites v. Moore (1992),79 Ohio App.3d 694, 700.