OPINION
{¶ 1} Appellant, YCS Concrete, Inc., appeals from a judgment of the Niles Municipal Court, awarding judgment and damages in favor of appellee, Susan Hixson ("Ms. Hixson"), d.b.a. Deck Creations.[1] This matter involves a contract entered into by the parties in which appellee agreed to pay appellant to construct a concrete pad. For the reasons set forth below, we affirm the judgment of the municipal court.
 {¶ 2} On July 9, 2002, appellant, acting pro se, sent a letter to the Mahoning County Court, Number 4, entitled a "Complaint for Money." This document seemed to allege breach of contract and requested damages in an amount of $3,100 from appellee. This letter was construed as a complaint, and the matter was assigned Case Number 02-CV-746. Appellee timely answered, denying the allegations set forth in the complaint, setting forth various affirmative defenses, and counterclaiming for breach of contract in the amount of $3,500.
 {¶ 3} Appellant then retained counsel. Upon appellant's motion, appellant's claim was dismissed without prejudice, on September 10, 2002. However, appellee's counterclaim was still pending with the Mahoning County Court. Appellant timely answered.
 {¶ 4} Appellant, via counsel, filed a complaint against appellee in the Niles Municipal Court, on October 31, 2002. Although it is not specifically alleged, appellant again seemed to claim breach of contract and requested damages in an amount of $3,100. Appellee timely answered, denying the allegations in the complaint and putting forth various affirmative defenses. This municipal court matter was assigned Case Number 02-CVF-877.
 {¶ 5} Although the record does not so specify, it is apparent from the record that the pending Mahoning County counterclaim was transferred to the Niles Municipal Court, and these matters were consolidated in the municipal court.
 {¶ 6} The following facts were ascertained from the narrative Statement of Evidence and Proceedings submitted on behalf of the parties and adopted by the municipal court as accurately setting forth the substance of the case. This statement is included in the record of appeal pursuant to App.R. 9(C).
 {¶ 7} "[Appellee] hired [appellant] to excavate and construct a concrete pad along the same slope as an existing concrete pad. [Appellant] was to pour this concrete pad at the Hess family residence in New Bedford, Pennsylvania. The concrete pad was to serve as the floor for an extensive patio project being constructed by [appellee].
 {¶ 8} "The contract price to be paid by [appellee] to [appellant] for this job was [$3,100]. Included in the contract price, in addition to the construction of a concrete pad, was the construction of a retaining wall. The job was to include the use of cardboard tubes called bollards. These bollards, furnished by [appellee] to [appellant] were to be used to leave holes in the concrete pad to allow for the placement of supports for wooden railings to be installed around the perimeter of the concrete pad.
 {¶ 9} "Prior to the commencement of work on the project, Ed Wilhelm, an employee of [appellant], met with [appellee's] representative, Ray Potter, at the job site to review working drawings of the project. Upon cross-examination, Mr. Wilhelm admitted that he was unable to read either blueprints or working drawings. Ed Wilhelm, in his own testimony, denied ever seeing working drawings prior to the date of the actual pouring of concrete.
 {¶ 10} "Mr. Wilhelm testified that Mr. Potter told him that the concrete pad would have a cover on it. Mr. Potter testified to the contrary. It is apparent that Mr. Potter meant the cover was a roof and Mr. Wilhelm interpreted that the covering would be a wood decking.
 {¶ 11} "[Appellant] completed its work on the concrete pad in July, 2002, immediately requesting payment in cash from [appellee]. [Appellee] paid [appellant] the agreed amount due by check. Before [appellant] could negotiate the check, [appellee] stopped payment on the check tendered after discovering the poor quality of the workmanship on the job and the complaints of the homeowner. [Appellee], along with [appellee's] witness, Ray Potter, testified that [appellant] failed to complete the concrete pad in a workmanlike manner. [Appellee] introduced photographs into evidence showing the concrete pad constructed by [appellant] not to be square, having a wavy uneven surface and having a slope different from that of a pre-existing concrete pad it was supposed to match. The photographs introduced by [appellee] also showed [appellant's] pad to have jagged uneven stress cracks, and that the finish brooming on the new pad was perpendicular rather than parallel to the finish brooming on the preexisting concrete pad.
 {¶ 12} "Upon discovering the poor quality of [appellant's] workman-ship on the project, [appellee] attempted to contact [appellant] on several occasions regarding the problems with the concrete pad. After contact was made[,] [appellant] refused to take any further actions to correct the problems with regard to the concrete pad.
 {¶ 13} "In consideration of [appellant's] unwillingness to correct the problems with the construction of the concrete pad, [appellee], in consultation with the homeowner, deemed the pad unusable in its current condition and decided to cover the faulty pad with a deck rather than break up the existing pad and relay a new concrete pad.
 {¶ 14} "[Appellant] had sued for its contract price of [$3,100] and [appellee] had counterclaimed claiming that due to the unworkmanlike job performed by [appellant], [appellee] was required to expend funds to repair the job.
 {¶ 15} "Neither of the party's answers to interrogatories and responses to request for production of document set forth any expert witnesses.
 {¶ 16} "[Appellee] Susan Hixson, over the objection of [appellant] testified as an expert witness in regards to the removal and pouring of concrete and cost involved.
 {¶ 17} "The evidence supported that [appellee] was satisfied with the retaining wall as poured.
 {¶ 18} "The Court placed a value of [$1,000] for the total of work performed by [appellant].
 {¶ 19} "The Court placed a value to correct the problem at a figure of [$3,500].
 {¶ 20} "Had [appellant] completed the contract by pouring the concrete slab and doing the other work in a workmanlike manner, [appellant] would have been entitled to [$3,100].
 {¶ 21} "The Court rules that for [appellee] to correct the problem with the concrete pad poured by [appellant], the cost would be [$3,500]. This was determined by the Court to be a measure of [appellee's] damage.
 {¶ 22} "Mr. Wilhelm testified that the concrete work was done in a workmanlike manner.
 {¶ 23} "The evidence established that [appellant] was never paid the contracted price of [$3,100]. [Appellee] never paid any monies to [appellant] for the contracted job."
 {¶ 24} Although the record does not so specify, it appears from the municipal court's judgment entry that the court conducted a bench trial. On November 17, 2003, the municipal court issued a judgment entry, finding for appellant, in part, on its complaint (regarding the retaining wall), and for appellee on its counterclaim. In this judgment entry, the municipal court indicated that it found "some value in the work performed. This finding is based upon the fact that [appellant] is satisfied with the retaining wall as poured and that the foundation for the composite deck is quite possibly the strongest patio foundation in existence. The Court places a value of $1,000 for the total of the work performed. To correct the problem the Court arrives at a figure of [$3,500]. It is the Court's belief that [appellant's] estimate to correct ($3,000.00) was too low and [appellee's] estimate ($5,000.00) was to [sic] high." Therefore, the municipal court entered a net judgment in favor of appellee in the amount of $2,500 plus interest and costs, having applied a set off in the amount of $1,000 for the retaining wall.
 {¶ 25} From this judgment, appellant timely appealed and sets forth the following assignments of error for our consideration.
 {¶ 26} "[1.] The trial court erred in rendering judgment for defendant-appellee in the amount of two thousand five hundred dollars ($2,500.00).
 {¶ 27} "[2.] The trial court erred in permitting appellee to testify as an expert witness in regards to the removal and pouring of concrete and cost involved."
 {¶ 28} In appellant's first assignment of error, it argues that the trial court's award of damages was against the manifest weight of the evidence and not supported by sufficient evidence. We disagree.
 {¶ 29} It is well-established that in reviewing the weight and sufficiency of the evidence upon which a trial court bases its decision, an appellate court must affirm the judgment of the trial court on appeal if the trial court's decision is supported by some competent, credible evidence. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus; Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Moreover, when reviewing the sufficiency of the evidence to determine whether or not it supports the trial court's decision, an appellate court must examine all of the evidence admitted at the trial or hearing in order to establish whether there was some evidence going to each of the essential elements of the case. Concord Twp. Trustees v. HazelwoodBuilders, Inc. (May 16, 1997), 11th Dis. No. 96-L-075, 1997 Ohio App. LEXIS 2140, at 2.
 {¶ 30} "Damages for a breach of a construction contract are generally measured by the reasonable cost of reconstruction; however, `if reconstruction and completion will involve unreasonable economic waste, damages are measured by the difference between the market value that the structure contracted for would have had and that of the imperfect structure received by the plaintiff.'" Scheider v. 1st Class Constr.,Inc., 11th Dist. No. 2001-G-2380, 2002-Ohio-3368, at ¶ 14, quoting OhioValley Bank v. Copley (1997), 121 Ohio App.3d 197, 210. See, also,Sites v. Moore (1992), 79 Ohio App.3d 694, 702; Jones v. Honchell
(1984), 14 Ohio App.3d 120, 123. Appellee is entitled to what it contracted for or the equivalent thereof. Sites at 702, citing Platnerv. Herwald (1984), 20 Ohio App.3d 341, 342.
 {¶ 31} In the matter sub judice, the trial court's award of damages is not against the sufficiency or weight of the evidence. It is apparent that the trial court found that appellant was in breach of the contract. As such, appellee was entitled to an amount of damages necessary to place appellee in the position it would have been had appellant fully performed under the contract. See Sites at 702, citing Platner at 342. Contrary to what appellant would like us to believe, as the breaching party, appellant was not entitled to the full contract price. See Sites at 701, (holding that a breaching party is not entitled to collect damages from a non-breaching party).
 {¶ 32} When awarding damages, the trial court reasoned that "* * * [appellee] was satisfied with the retaining wall as poured and * * * the foundation for the composite deck is quite possibly the strongest patio foundation in existence. The Court places a value of $1,000.00 for the total of the work performed. To correct the problem the Court arrives at a figure of $3,500.00. * * *" Accordingly, the trial court awarded damages to appellee on its counterclaim in the amount of $2,500 plus interest and costs. This involves a set off applied in favor of appellant for $1,000.
 {¶ 33} This award is supported by competent, credible evidence and is not against the manifest weight of the evidence or unsupported by the sufficiency of the evidence. It is apparent that the trial court off set the $3,500 required to correct the problem by the $1,000 value of the work performed. The trial court then arrived at a net damage award of $2,500 for appellee. We cannot conclude that the trial court erred, and appellant's first assignment of error is without merit.
 {¶ 34} In appellant's second assignment of error, it argues that the trial court erred by permitting appellee to testify, over objection, as an expert witness in regard to the removal and pouring of concrete and the cost involved. We disagree.
 {¶ 35} A trial court's ruling as to the admission or exclusion of testimony is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. Miller v. Bike Athletic Co.,80 Ohio St.3d 607, 1998-Ohio-178. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 36} Further, an evidentiary basis has long been recognized for the exclusion of otherwise relevant evidence if its admission would result in unfair surprise disproportionate to its probative value. Huffman v. HairSurgeon, Inc. (1985), 19 Ohio St.3d 83, 85. Pursuant to Civ.R. 26(E), "[a] party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:
 {¶ 37} "(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to * * * (b) the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify.
 {¶ 38} "(2) A party who knows or later learns that his response is incorrect is under a duty seasonably to correct the response." See, also, Huffman at 85.
 {¶ 39} In the matter sub judice, appellant propounded interrogatories upon appellee. In these interrogatories, appellant asked whom appellee intended to call as witnesses at trial. Appellant also requested a brief synopsis of each witness's testimony. In appellee's response, appellee indicated that it intended to call Ms. Hixson, Mark Hixson, Ray Potter, John Farrentino, and Jason Hess as witnesses. Appellee did not indicate a synopsis of the expected testimony of each witness.
 {¶ 40} Appellant also requested names of individuals that appellee intended to call as expert witnesses and requested a brief synopsis of each expert's testimony. In response, appellee stated, "Undetermined at this time."
 {¶ 41} Appellee never supplemented its response. Appellant never articulated a request for supplementation or moved to compel more complete answers. Neither party filed an expert witness list prior to trial.
 {¶ 42} However, in this matter, appellant has merely argued in its brief that the trial court wrongfully permitted Ms. Hixson to testify as an expert witness. Although appellant contends this constituted a surprise, it has not argued or shown that permitting Ms. Hixson to testify as an expert constituted "unfair surprise." See, e.g., Edwardsv. Floyd (Mar. 26, 1999), 11th Dist. No. 98-T-0027, 1999 Ohio App. LEXIS 1231, at 10.
 {¶ 43} Appellant understood that Ms. Hixson would testify as a witness, although not an expert witness, as this was revealed through appellee's response to interrogatories. Further, although appellee did not articulate the substance of each witness's testimony in its responses, appellant never filed a motion to compel complete answers. As such, appellant has failed to argue or demonstrate that Ms. Hixson's testimony, as an expert witness, constituted an "unfair surprise."
 {¶ 44} Further, we note that Ms. Hixson's testimony in regard to costs involved with removal and pouring of concrete was proper testimony from a lay witness. According to Evid.R. 701, "[i]f the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based upon the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue." See, also, Biello v. Poly-Tec Tube (May 17, 1996), 11th Dist. No. 95-T-5347, 1996 Ohio App. LEXIS 2005, at 4. In order for an opinion to be rationally based upon the perception of a witness, the witness must have first-hand knowledge of the subject of his testimony. Lee v.Baldwin (1987), 35 Ohio App.3d 47, paragraph two of the syllabus.
 {¶ 45} According to the contract in the instant matter, Ms. Hixson, acting through appellee, contracted with appellant to pour the concrete for the concrete pad at the Hess residence. Ms. Hixson had first-hand knowledge of these costs through the operation of her business, i.e., from the receipts and bills that the business collected.[2] Expert testimony was not required to establish the costs that would be associated with removal and pouring of concrete, and Ms. Hixson could testify to these costs as a lay witness.
 {¶ 46} Further, from appellant's general objection, we are unable to ascertain the specific nature of the objection. Error may not be predicated upon a ruling admitting evidence unless a substantial right was affected and a timely objection was made stating the specific ground for the objection if the specific ground was not apparent from the context. Evid.R. 103(A)(1). In this case, the reason for the objection was not apparent from the context. Accordingly, appellant failed to properly preserve this issue. See, e.g., Brockway v. Finast Supermarkets, Inc.
(Mar. 17, 1995), 11th Dist. No. 94-L-048, 1995 Ohio App. LEXIS 978, at 5-6.
 {¶ 47} In summary, we cannot conclude that the municipal court abused its discretion by admitting testimony by Ms. Hixson as to the costs associated with removal and pouring of concrete. Appellant's second assignment of error is without merit.
 {¶ 48} Appellant's assignments of error are without merit. We hereby affirm the judgment of the Niles Municipal Court.
Ford, P.J., Rice, J., concur.
[1] We will refer to Susan Hixson, d.b.a. Deck Creations, as appellee. Susan Hixson, individually will be referred to as "Ms. Hixson."
[2] Some receipts were contained within the record, labeled as appellee's exhibits. Despite this, the record does not contain a transcript of the trial, and the statement of evidence does not articulate precisely what evidence was admitted during the trial and what testimony accompanied the exhibits.